UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

HONORABLE JOHN A. KRONSTADT

UNITED STATES DISTRICT JUDGE PRESIDING

- - -


| | |
|---|---|
| TRADELINE ENTERPRISES PVT. LTD., | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| VS. | ) CV115-08048-JAK |
| | ) |
| JESS SMITH & SONS, LLC, ET AL., | ) |
| | ) |
| DEFENDANTS. | ) |
| _____ | ) |


REPORTER'S TRANSCRIPT OF PROCEEDINGS

LOS ANGELES, CALIFORNIA

MONDAY, APRIL 4, 2016; 8:30 AM


_____

ALEXANDER T. JOKO, CSR NO. 12272
FEDERAL OFFICIAL COURT REPORTER
350 W. 1ST STREET, ROOM 4311
LOS ANGELES, CA 90012
AJ_CSR@YAHOO.COM

1    **APPEARANCES OF COUNSEL:**

2    FOR PLAINTIFF:        DOMINIC SURPRENANT
                           QUINN EMANUEL URQUHART
3                          OLIVER AND HEDGES LLP
                           865 S. FIGUEROA ST
4                          10TH FL.
                           LOS ANGELES, CA 90017-2543
5
                           PAUL JOSEPH SLATTERY
6                          QUINN EMANUEL URQUHART
                           AND SULLIVAN LLP
7                          865 SOUTH FIGUEROA STREET
                           10TH FLOOR
8                          LOS ANGELES, CA 90017

9    FOR DEFENDANTS:       EDWARD C. DUCKERS
                           STOEL RIVES LLP
10                         THREE EMBARCADERO CENTER
                           SUITE 1120
11                         SAN FRANCISCO, CA 94111

12                         DANIEL J. WOODS
                           MUSIC PEELER AND GARRETT LLP
13                         ONE WILSHIRE BOULEVARD
                           SUITE 2000
14                         LOS ANGELES, CA 90017-3383

15

16

17

18

19

20

21

22

23

24

25

```
 1              LOS ANGELES, CALIFORNIA; MONDAY, APRIL 4, 2016

 2                            8:30 AM

 3                           - - - - -

 4

 5

 6              THE COURT:  ITEM NO. 5, CV15-08048, TRADELINE

 7      ENTERPRISES V. JESS SMITH & SONS COTTON.

 8              MR. SUPRENANT:  GOOD MORNING, YOUR HONOR.

 9      DOMINIC SUPRENANT FOR THE PLAINTIFF.

10              MR. DUCKERS:  GOOD MORNING, YOUR HONOR.  ED

11      DUCKERS FOR DEFENDANT JESS SMITH & SONS COTTON.

12              MR. SLATTERY:  GOOD MORNING, YOUR HONOR.  PAUL

13      SLATTERY FOR PLAINTIFF.

14              MR. WOODS:  GOOD MORNING, YOUR HONOR.  DAN

15      WOODS FOR DEFENDANT J.G. BOSWELL COMPANY.

16              THE COURT:  GOOD MORNING.  JUST A MINUTE.

17                  WE'RE HERE ON A SERIES OF MOTIONS, AS

18      WELL AS THE SCHEDULING CONFERENCE.

19                  I THINK THE CORE ISSUES IN THE MOTIONS --

20      THAT ARE PRESENTED BY THE MOTIONS ARE THE RULE 19

21      ISSUE, INDISPENSABLE PARTY, AND THE MOTION TO -- AND

22      THE ARBITRABILITY ISSUE.

23                  THE MOTION TO DISMISS RAISES SOME ISSUES,

24      BUT I DON'T -- DEPENDING ON THE OUTCOME OF THE FIRST

25      TWO, IT MAY OR MAY NOT BE NECESSARY TO REACH THEM.
```

```
 1                WITH RESPECT TO THE INDISPENSABLE PARTY

 2    ISSUE - I.E., WHETHER THE SUPIMA ASSOCIATION IS AN

 3    INDISPENSABLE PARTY - MY TENTATIVE VIEW IS THAT IT'S

 4    NOT.

 5                I THINK THAT THE NINTH CIRCUIT'S DECISION

 6    IN WARD VERSUS APPLE IS INSTRUCTIVE, 791 F.3D 1041, AN

 7    ANTITRUST CASE.  APPLE AND THE TELEPHONE COMPANY WERE

 8    BOTH -- ONLY APPLE WAS NAMED, NOT THE PROVIDER, AT&T.

 9    AND I THINK THE ANALYSIS IS QUITE COMPARABLE HERE.

10                SUBJECT TO MY UNDERSTANDING FROM THE

11    PLAINTIFF THAT IT WOULDN'T -- IT WOULD NOT -- THAT --

12    I'LL HEAR FROM THE PLAINTIFF ON ITS POSITION AS TO

13    WHETHER, IF THERE WERE SUCH A PROCEEDING HERE, AND IF

14    IT WERE DETERMINED THAT THERE WERE LIABILITY HERE AS TO

15    THESE DEFENDANTS, WHAT IS DEFENDANT'S POSITION -- WHAT

16    IS PLAINTIFF'S POSITION AS TO WHETHER THAT WOULD HAVE

17    ANY POSSIBLE COLLATERAL ESTOPPEL EFFECT ON SUPIMA

18    ASSOCIATION?

19                AND IF YOU'RE PREPARED TO SAY IT WOULD

20    HAVE NONE, THEN I THINK THAT WOULD ALSO BE CONSISTENT

21    WITH THE RATIONALE OF THE AT&T MATTER.

22                THE DIFFERENCE BEING THE FACTUAL

23    DIFFERENCE BETWEEN AT&T AND THE SUPIMA ASSOCIATION,

24    GIVEN THE ROLE THAT CERTAIN OTHER DEFENDANTS HAVE WITH

25    SUPIMA, INCLUDING ONE DEFENDANT SERVING AS ITS CHAIR.
```

1              WITH RESPECT TO THE ARBITRATION ISSUE,

2      YOU AGREE ON CERTAIN THINGS, THAT ARIZONA LAW APPLIES

3      TO DETERMINE THE DOCTRINE OF WHETHER A NON-SIGNATORY --

4      WHETHER A DEFENDANT WHO IS NOT A SIGNATORY CAN SEEK TO

5      REQUIRE A PLAINTIFF WHO IS A SIGNATORY TO AN AGREEMENT

6      WITH AN ARBITRATION CLAUSE TO ARBITRATE AS TO -- TO

7      ARBITRATE.  AND YOU AGREE THAT ARIZONA LAW APPLIES.

8              AND THERE ARE ARIZONA COURT OF APPEAL

9      DECISIONS ON THIS ISSUE, THE ESTOPPEL BEING PRESENTED

10     IN DIFFERENT FORMS.  THOSE DECISIONS, INCLUDING THE SUN

11     VALLEY RANCH DECISION, IN CONDUCTING AN ANALYSIS OF

12     ARIZONA LAW, HAVE LOOKED TO FEDERAL COURTS OF APPEAL

13     WHICH HAVE BEEN APPLYING THE SAME DOCTRINE, NOT UNDER

14     ARIZONA LAW, BUT UNDER THE LAWS OF DIFFERENT STATES AND

15     AS WELL AS UNDER THE FEDERAL ACT.

16             WHAT YOU DIDN'T DISCUSS IN YOUR BRIEFS

17     ARE SOME CASES THAT I THINK ARE ACTUALLY IMPORTANT ON

18     THAT ISSUE.  AND THEY INCLUDE THE PRM CASE FROM THE

19     EIGHTH CIRCUIT, 592 F.3D 830, AN EIGHTH CIRCUIT

20     DECISION FROM 2010; ANOTHER EIGHTH CIRCUIT DECISION,

21     WHOLESALE, 707 F.3D. 919, A DECISION FROM THE EIGHTH

22     CIRCUIT IN 2013.  THERE'S THE FOURTH CIRCUIT CASE IN

23     AMERICAN BANKERS, 453 F.3D 623, WHICH I THINK, ALSO, IS

24     SIGNIFICANT.  AND EACH OF THOSE CASES CITES OTHER

25     FEDERAL CIRCUIT CASES, INCLUDING CASES FROM THE SECOND

```
1    CIRCUIT ON THIS ISSUE.  AND, AS I SAY, YOU HAVEN'T

2    BRIEFED THOSE CASES.  AND I DON'T KNOW IF YOU'RE

3    FAMILIAR WITH THEM.

4              ARE YOU FAMILIAR WITH THEM?

5              MR. SUPRENANT:  YOUR HONOR, AMERICAN BANKERS

6    WAS CITED IN THE REPLY.  AND I AM PREPARED TO DISCUSS

7    IT.

8              THE COURT:  HOW ABOUT THE PRM CASE?

9              MR. SUPRENANT:  I AM NOT FAMILIAR WITH THOSE

10   CASES, YOUR HONOR.

11             THE COURT:  AND THE WHOLESALE CASE?

12             MR. SUPRENANT:  I DO NOT BELIEVE THAT WAS

13   CITED BY EITHER PARTY.

14             THE COURT:  I THINK NOT.

15             ARE YOU FAMILIAR WITH THE PRM CASE?

16             MR. DUCKERS:  I AM NOT, YOUR HONOR, OR THE

17   WHOLESALE CASE.

18             THE COURT:  ALL RIGHT.  THANK YOU.

19             I THINK THE CASES TALK ABOUT THE

20   EQUITABLE ESTOPPEL DOCTRINE, AND THEY GIVE VARIOUS

21   STANDARDS.

22             IN THE AMERICAN BANKERS CASE, WHICH

23   INVOLVED THE PROMISSORY NOTE SOLD TO INVESTORS, IN THE

24   ARBITRATION CLAUSE, THEY WERE SOLD BY AN ENTITY THAT

25   HAD SOLD THE INSURANCE POLICIES IN CONNECTION WITH
```

1    AMERICAN BANKERS, WHICH HAD AGREED TO UNDERWRITE THEM.

2    AND YOU'RE AWARE OF THE FACTS THERE.

3            AND THERE'S -- YOU KNOW, YOU CAN TAKE

4    DIFFERENT POSITIONS ON HOW TO APPLY THAT CASE, BUT I

5    THINK IT NEEDS TO BE LOOKED AT IN CONNECTION WITH THESE

6    OTHER CASES TO WHICH I'VE REFERRED.  AND, THEREFORE, I

7    WOULD LIKE TO GET YOUR INPUT.

8            IN THE PRM CASE, FOR EXAMPLE, A LICENSOR

9    ENTERED AN AGREEMENT WITH THE LICENSEE.  AND THERE WAS

10   A DISPUTE ABOUT WHAT THE SCOPE OF THAT LICENSE

11   AGREEMENT WAS.  WELL, IT WASN'T A "DISPUTE."  THERE

12   WERE CERTAIN PARTS OF THAT LICENSE AGREEMENT LIMITING

13   ITS GEOGRAPHIC SCOPE.  THE LICENSEE ENTERED AN

14   AGREEMENT WITH ANOTHER -- WITH ANOTHER PARTY THAT WAS

15   IN A GEOGRAPHIC AREA THAT WAS, ARGUABLY, NOT WITHIN THE

16   SCOPE OF THE ORIGINAL LICENSE.  A DISPUTE AROSE.  AND

17   THAT LICENSEE WAS SUED.  AND THAT NEW PARTY WAS SUED

18   AND SOUGHT TO REQUIRE THE PLAINTIFF/LICENSOR TO

19   ARBITRATE CONSISTENT WITH THAT ARBITRATION AGREEMENT

20   THAT WAS JUST PART OF THE ORIGINAL LICENSING AGREEMENT.

21   AND THE EIGHTH CIRCUIT CONCLUDED THAT IT WAS REQUIRED

22   TO ARBITRATE.

23            THE EIGHTH CIRCUIT DISTINGUISHED THAT

24   CASE AND THE WHOLESALE CASE, WHICH IS AN ANTITRUST CASE

25   INVOLVING PURCHASERS OF FOOD MERCHANDISE -- RETAILERS

1    OF FOOD MERCHANDISE, SAYING THERE WAS A CONSPIRACY

2    AMONG THOSE WHO PROVIDED THE FOOD PRODUCTS TO THEM.

3    AND EACH -- EACH OF THE FOOD PROVIDERS HAD AN AGREEMENT

4    WITH THE RETAILER PLAINTIFFS.  AND THE AGREEMENTS

5    CONTAINED ARBITRATION CLAUSES.  THE INDIVIDUAL

6    PLAINTIFFS ELECTED TO SUE THE DEFENDANTS WITH WHOM THEY

7    DID NOT HAVE AGREEMENTS.  SO THEY SUED OTHER ALLEGED

8    CO-CONSPIRATORS.  AND THE EIGHTH CIRCUIT DISTINGUISHED

9    PRM THERE BASED ON THE -- AS YOU'LL SEE WHEN YOU READ

10   IT.

11                I THINK THAT THE MOST EFFICIENT WAY TO

12   PROCEED IS TO GET SOME SUPPLEMENTAL BRIEFING WITH

13   RESPECT TO YOUR RESPECTIVE VIEWS ON THESE CASES BECAUSE

14   I THINK THEY'RE SIGNIFICANT IN THEIR APPROACH.

15                AGAIN, THEY'RE NOT CONTROLLING ARIZONA

16   LAW; BUT, AS I STATED, THE ARIZONA COURTS OF APPEAL

17   HAVE LOOKED TO FEDERAL AUTHORITY ON THIS.  SO I THINK

18   THAT'S THE WAY -- I THINK THAT'S GOING TO BE THE MOST

19   EFFICIENT WAY TO PROCEED.

20                THAT WAY, I'M NOT GOING TO ISSUE AN ORDER

21   ANALYZING CASES THAT YOU HAVEN'T LOOKED AT.

22                AND IF YOU FIND OTHER CASES THAT YOU

23   THINK ARE IMPORTANT, YOU'LL TELL ME.

24                AND, TO BE CLEAR ABOUT THIS, I

25   RECOGNIZE -- I UNDERSTAND -- I HAVE READ THESE CASES.

```
1    SO I RECOGNIZE THAT THE WHOLESALE CASE IS AN ANTITRUST

2    CASE.  I KNOW THAT.  AND I RECOGNIZE THAT IT

3    DISTINGUISHES THE PRM CASE.  AND I KNOW THAT THE PRM --

4    THEY'RE FROM THE SAME CIRCUIT.

5              SO TO BE HELPFUL HERE, I THINK WHAT YOU

6    NEED TO DO IS TO GIVE ME NOT JUST, "OH, WELL, THIS

7    CASE" -- "THE EIGHTH CIRCUIT DISTINGUISHED THAT CASE."

8              I THINK YOU HAVE TO REALLY CAREFULLY

9    THINK ABOUT IT IN THE CONTEXT OF THE ALLEGATIONS THAT

10   ARE MADE IN THE COMPLAINT HERE, WHICH ARE QUITE

11   DETAILED WITH RESPECT TO THE ROLE OF SUPIMA

12   ASSOCIATION -- ALLEGED ROLE OF SUPIMA ASSOCIATION.

13   THAT'S WHAT I NEED.

14             I HAVE READ THE CASES, BUT I NEED YOU TO

15   GIVE ME YOUR RESPECTIVE VIEWS ON HOW THEY APPLY IN

16   LIGHT OF, NOT JUST THOSE TWO CASES, BUT, AS I SAID,

17   THERE'S A SERIES OF CASES FROM DIFFERENT CIRCUITS THAT

18   ARE OFTEN CITED THAT LOOK AT THIS.  SO THAT'S WHAT I

19   THINK WOULD BE THE MOST EFFICIENT.

20             SO BEFORE I -- THAT'S MY TENTATIVE

21   THINKING.

22             MR. SUPRENANT, LET ME HEAR FROM YOU ON

23   THAT.

24        MR. SUPRENANT:  WOULD IT BE THE MOTION TO

25   COMPEL OR THE 12(B)(7) ISSUE?
```

```
 1              THE COURT:  WELL, EITHER ONE.  IT'S THE MOTION

 2    TO COMPEL -- IT'S THE ARBITRATION ISSUE.  I THINK THE

 3    TWO ISSUES THAT I SAID ARE SIGNIFICANT ARE THE

 4    INDISPENSABLE PARTY ISSUE.  IF I WERE TO CONCLUDE THAT

 5    SUPIMA ASSOCIATION IS AN INDISPENSABLE PARTY, THEN

 6    THERE'S AN ARBITRATION PROVISION.

 7              TO BE CLEAR, THERE ARE TWO DIFFERENT

 8    ARBITRATION AGREEMENTS.  THERE'S THE ARBITRATION

 9    AGREEMENT THAT'S PART OF THE LICENSING AGREEMENT, AND

10    THEN THERE ARE OTHER -- THERE'S THEN -- WHEN THE

11    SUPPLIERS -- IN THE CONTRACTS BETWEEN PLAINTIFF AND

12    THOSE TO WHOM PLAINTIFF SELLS, THERE'S AN ARBITRATION

13    STATEMENT.  I THINK THERE ARE TWO DIFFERENT AGREEMENTS.

14              I'M FOCUSING ON THE ARBITRATION AGREEMENT

15    IN THE SUPIMA LICENSING AGREEMENT.

16              I'M NOT FOCUSING -- I AM NOT PERSUADED,

17    AT THIS POINT, THAT THE OTHER ONE-SENTENCE STATEMENT

18    ABOUT ARBITRABILITY OF DISPUTES OVER GOODS PURCHASED

19    AND SOLD IS COMPELLING.  I THINK -- I DON'T THINK

20    IT'S -- I DON'T THINK THAT'S THE ISSUE.

21              SO THE POINTS ARE, ONE, RULE 19, WHERE MY

22    TENTATIVE VIEW WOULD BE THAT SUPIMA IS NOT A NECESSARY

23    PARTY AND SUBJECT TO THE ISSUE I STATED AS TO

24    COLLATERAL ESTOPPEL.

25              AND, SECOND, ON ARBITRABILITY, THE
```

```
1    OBLIGATION OF A NON -- OF THE PLAINTIFF, WHO IS A
2    SIGNATORY, TO ARBITRATE NOTWITHSTANDING THAT THE
3    PLAINTIFF HAS NOT SUED THE PARTY -- SUED THE ENTITY
4    WITH WHOM IT CONTRACTED, BUT HAS SUED OTHERS WHO HAVE A
5    LINKS TO THAT ENTITY.
6              MR. SUPRENANT:  YES, YOUR HONOR.
7                   FIRST, I THINK UNDER THE WARD V. APPLE
8    CASE, THAT IT HOLDS THAT THERE CANNOT BE ISSUE
9    PRECLUSION FLOWING FROM A LITIGATION IN WHICH
10   T-MOBILE -- IT WAS AT&T.  AT&T WAS NOT A PARTY.  I
11   WOULD NOT ARGUE THAT -- I DON'T THINK THEY CAN HAVE
12   ISSUES PRECLUDED BECAUSE THEY'RE NOT A PARTY.  THEY'RE
13   NOT REPRESENTED.  AND I THINK THAT IS CONSISTENT WITH
14   THE PRETTY CLEAR HOLDING IN WARD VERSUS APPLE JUST LAST
15   YEAR.  SO I DO NOT THINK THEY ARE A NECESSARY PARTY.  I
16   THINK WARD VERSUS APPLE CONTROLS.
17             THE COURT:  ARE YOU PREPARED -- WOULD YOU BE
18   PREPARED TO STIPULATE THAT THERE WOULD BE NO COLLATERAL
19   ESTOPPEL EFFECT?
20             MR. SUPRENANT:  I WOULD BE, BUT I WOULD HAVE
21   TO DISCUSS WITH MY CO-COUNSEL AND MY CLIENT.  BUT I
22   THINK, AS A PRELIMINARY MATTER, I WOULD BE WILLING TO
23   SO STIPULATE, YOUR HONOR.
24             THE COURT:  I UNDERSTAND.
25                  GO AHEAD.
```

1    MR. SUPRENANT:  WITH RESPECT TO THE MOTION TO

2  COMPEL ARBITRATION, I DON'T WANT TO SWIM UPSTREAM

3  AGAINST YOUR HONOR'S TENTATIVE.

4    THE COURT:  I DIDN'T SAY A "TENTATIVE."  I

5  DIDN'T STATE ONE.

6    MR. SUPRENANT:  THANK YOU, YOUR HONOR.

7    THE COURT:  I DON'T THINK I DID.

8    DID I STATE IT?

9    I DON'T THINK I STATED A TENTATIVE VIEW

10  ON THAT, OTHER THAN THAT I WANTED YOU TO ADDRESS THESE

11  CASES, WHICH WENT IN DIFFERENT DIRECTIONS.

12    MR. SUPRENANT:  BY A "TENTATIVE," I WAS BEING

13  IMPRECISE.  I MEANT YOUR HONOR'S COMMENTS.

14    THE FIRST THING I WOULD SAY IS,

15  PLAINTIFFS (SIC) BEAR THE BURDEN.  AND IF THEY LOSE ON

16  THE CASES THEY HAVE IDENTIFIED, WHICH I THINK THEY

17  DO -- I WILL BE PERFECTLY AT YOUR HONOR'S PLEASURE TO

18  BRIEF THOSE ADDITIONAL CASES.  BUT MY FIRST ARGUMENT

19  WOULD BE, UNDER THE CASES THEY CITE, THEY LOSE, I THINK

20  WE SHOWED IN OUR OPPOSITION.

21    THEY DID, YOUR HONOR, IN THE REPLY, CITE

22  A NEW CASE, ONE OF THE THREE CASES YOUR HONOR

23  DISCUSSED, WHICH IS THE AMERICAN BANKERS.  AND I HAD

24  THAT DECISION BECAUSE I THINK IT'S IMPORTANT BECAUSE IT

25  REALLY IS IN LINE WITH -- IT IS IN LINE WITH THE

```
1    ARGUMENT THAT WE MADE.  AND I PULLED IT OUT BECAUSE I

2    HAVE IT HERE WITH ME, YOUR HONOR.

3              THE COURT:  I HAVE IT.

4              MR. SUPRENANT:  AND I MANAGED TO LOSE IT.

5                   IT'S RIGHT HERE, YOUR HONOR.

6                   IT'S COMPLETELY CONSISTENT -- IN OUR

7    OPPOSITION, WE SAID, UNDER THE EQUITABLE ESTOPPEL CASES

8    THAT THEY HAD CITED, IF WE HAD SUED MR. LEWKOWITZ AND

9    MR. CURLEE, THE EXECUTIVE VICE PRESIDENT AND THE

10   PRESIDENT OF THE ASSOCIATION, THEY COULD SAY, "LOOK,

11   WE'RE NOT SIGNATORIES TO THIS, BUT YOU WERE ATTEMPTING

12   TO FIND LIABILITY AGAINST US BASED ON OUR CONDUCT UNDER

13   THAT CONTRACT."  AND I THINK THAT WOULD BE AN

14   APPROPRIATE USE OF EQUITABLE ESTOPPEL.

15                   THEY CITE A RELATED CASE -- AND WE

16   ADMITTED THAT.  WE SAID IN THE OPPOSITION, IF YOU WERE

17   TRYING TO ESTABLISH LIABILITY AGAINST THE DEFENDANT, A

18   NON-SIGNATORY, BASED ON HIS OR HER OBLIGATIONS OR

19   PERFORMANCE UNDER THE CONTRACT THAT GIVES RISE TO THE

20   ARBITRATION, THEN EQUITABLE ESTOPPEL APPLIES.

21                   AND I THINK, YOUR HONOR, THE AMERICAN

22   BANKERS CASE IS REALLY CONSISTENT WITH THAT BECAUSE THE

23   HOLDING IN THAT CASE - AND I'M READING AT 453 F.3D. AT

24   628 - "ESTOPPEL IS APPROPRIATE, IF" - AND THEY'RE

25   QUOTING ANOTHER AUTHORITY - "IN SUBSTANCE, THE
```

```
1    SIGNATORY'S UNDERLYING COMPLAINT," THAT WOULD BE
2    TRADELINE, "IS BASED ON THE NON-SIGNATORY'S," THAT
3    WOULD BE THE DEFENDANTS, "ALLEGED BREACH OF THE
4    OBLIGATIONS AND DUTIES ASSIGNED TO IT UNDER THE
5    AGREEMENT," CITING SUNKIST.
6              WE DO NOT ALLEGE THAT J.G. BOSWELL OR
7    JESS SMITH'S LIABILITY ARISES UNDER THEIR FAILURE UNDER
8    BREACHES OF OBLIGATIONS AND DUTIES UNDER THE SUPIMA
9    LICENSE AGREEMENT.  SO I THINK AMERICAN BANKERS, YOUR
10   HONOR, IS PERFECTLY CONSISTENT WITH THE OPPOSITION --
11   WITH OUR ARGUMENT IN THE OPPOSITION.
12             THE COURT:  ONE OF THE THINGS ALLEGED IN THE
13   COMPLAINT IS THAT THE SUPIMA LICENSING AGREEMENT WAS
14   UNILATERALLY AND IMPROPERLY CHANGED TO PERMIT A
15   TERMINATION WITHOUT THE OPPORTUNITY FOR AN ANALYSIS OF
16   THE SUPIMA.
17             MR. SUPRENANT:  THAT'S CORRECT.
18             BUT THAT IS NOT AN OBLIGATION OR DUTY
19   WITH RESPECT TO THE DEFENDANTS.
20             THE COURT:  NO, I UNDERSTAND.
21             BUT IT'S AN OBLIGATION OR DUTY THAT IS
22   PART OF THE COMPLAINT, ISN'T IT, OF THE ORGANIZATION?
23             MR. SUPRENANT:  WHAT WE SAY IS THAT, PART OF
24   THE CONSPIRACY WAS TO DEPRIVE US OF PROCEDURAL
25   PROTECTIONS WE HAD UNDER THE LICENSE.  THAT'S CORRECT,
```

```
1    YOUR HONOR.

2              BUT THERE IS NO OBLIGATION THAT THE

3    LICENSE AGREEMENT IMPOSES ON THE DEFENDANTS.  IT'S NOT

4    LIKE WE CAN SAY THE QUOTE I JUST READ FROM AMERICAN

5    BANKERS.  OUR CLAIM DOES NOT ARISE FROM ANY OBLIGATION

6    THEY HAD.

7              NOW, WE WOULD -- IF MY CLIENT HAD MORE

8    RESOURCES AND THE SUPIMA ASSOCIATION HAD MORE WORTH, WE

9    WOULD PURSUE THEM IN ARBITRATION; BUT THE ECONOMICS

10   DON'T MAKE ANY SENSE.

11             BUT I DON'T THINK THE DEFENDANTS HAVE ANY

12   ARGUMENT -- EQUITABLE ESTOPPEL ARGUMENT THAT IS

13   SUPPORTED BY THE CASE LAW.  IT'S NOT SUPPORTED BY

14   SUNKIST.  AND I DON'T THINK IT'S SUPPORTED BY AMERICAN

15   BANKERS.

16             THE COURT:  IF THE LICENSE HAD NEVER BEEN

17   TERMINATED, WOULD THE CURRENT CLAIMS BE VIABLE?

18             MR. SUPRENANT:  IF THE LICENSE HAD NEVER BEEN

19   TERMINATED --

20             THE COURT:  WOULD THE CURRENT CLAIMS BE

21   VIABLE?

22             MR. SUPRENANT:  NO.  IF WE HAD NEVER -- WELL,

23   LET ME TAKE THAT BACK.

24             KNOWING WHAT WE KNOW NOW, YOUR HONOR,

25   HAVING TAKEN VERY LITTLE DISCOVERY, THERE WAS AN
```

```
1    ORGANIZED CAMPAIGN OF DISPARAGEMENT -- FALSE

2    DISPARAGEMENT THAT PREVENTED US FROM GETTING AN

3    ENORMOUSLY VALUABLE CUSTOMER THAT J.G. BOSWELL NOW

4    SERVES, AND WE THINK EITHER PRINCIPALLY OR EXCLUSIVELY.

5          THE COURT:  IS THAT A SECTION 1 CLAIM?

6          MR. SUPRENANT:  THAT WOULD BE A SECTION 1

7    CLAIM -- I'M THINKING ON MY FEET, YOUR HONOR.

8              I THINK THERE WOULD BE A CONSPIRACY

9    CLAIM.  I THINK IT WOULD CHANGE THE CONTOURS OF THE

10   COMPLAINT.

11             BUT THE LICENSE BEING TERMINATED, AS WE

12   ALLEGED AND CAN PROVE, LED TO ESSENTIALLY THE

13   IMMEDIATE --

14         THE COURT:  NO, THAT'S WHAT I'M FOCUSING ON.

15   THAT'S -- ALL RIGHT.

16         MR. SUPRENANT:  AND THEY CITED ANOTHER CASE,

17   YOUR HONOR, IN THEIR REPLY, THE GRIGSON VERSUS CREATIVE

18   ARTIST AGENCY, 210 F.3D 524, FIFTH CIRCUIT 2000.

19   THERE, IT'S THE SAME EXACT PRINCIPLE THAT THE -- AS THE

20   AMERICAN BANKERS CASE.  IT STATES AT 528 THAT A

21   PLAINTIFF, THAT'S US, TRADELINE, CANNOT ON THE ONE HAND

22   SEEK TO HOLD THE NON-SIGNATORE LIABLE PURSUANT TO THE

23   DUTIES IMPOSED BY THE AGREEMENT.  NO PART OF OUR

24   COMPLAINT SAYS THERE WERE DUTIES IMPOSED BY THE LICENSE

25   AGREEMENT ON THE DEFENDANTS.
```

1          SO I THINK, AT THIS POINT, YOUR HONOR,

2     THE MOTION SHOULD BE DENIED BECAUSE PLAINTIFFS (SIC)

3     HAVE FAILED TO CITE ANY AUTHORITY THAT SUPPORTS IT.

4          THE COURT:  ALL RIGHT.  I UNDERSTAND.

5          BUT I WANT YOU TO ADDRESS THE CASES THAT

6     I HAVE FOCUSED ON.

7          MR. SUPRENANT:  YES, YOUR HONOR.

8          THE COURT:  I'M NOT GOING TO IGNORE THEM.  SO

9     I -- IN OTHER WORDS, I'M NOT GOING TO JUST -- I JUST --

10    MAYBE YOU'LL BOTH CONCLUDE THAT THE CASES TO WHICH I

11    HAVE REFERRED DON'T APPLY.  AND THAT'S FINE.  BUT I

12    WOULD LIKE TO HEAR YOUR VIEWS ON THAT BEFORE I DECIDE

13    THE ISSUE.

14         MR. SUPRENANT:  YES, YOUR HONOR.

15         JUST INDICATE A SCHEDULE, AND WE WILL

16    COMPLY.

17         THE COURT:  THANK YOU.

18         MR. SUPRENANT:  THANK YOU, YOUR HONOR.

19         MR. DUCKERS:  THANK YOU, YOUR HONOR.  ED

20    DUCKERS FOR JESS SMITH.  IF IT PLEASE THE COURT, I'LL

21    BE VERY BRIEF.

22         WITH RESPECT TO THE 12(B)(7) MOTION TO

23    DISMISS AND THE APPLICATION OF THE WARD CASE TO THE

24    FACTS HERE, LET ME JUST POINT OUT A COUPLE OF

25    DISTINGUISHING FACTORS BECAUSE I DON'T THINK WARD

```
 1   APPLIES.

 2                AND JUST AS A STARTING POINT, LET'S BEAR

 3   IN MIND, WARD IS A CONSUMER CLASS ACTION WHERE THE

 4   CONSUMERS SIGNED BOILERPLATE ARBITRATION CLAUSES.  IT

 5   WAS THE PLAINTIFF'S THIRD CRACK AT TRYING TO GET AROUND

 6   THE ARBITRATION PROVISIONS IN THE AT&T CONTRACT BY

 7   ARTFULLY PLEADING IT SUCH THAT APPLE COULD ONLY BE THE

 8   DEFENDANT.

 9                THAT'S QUITE DIFFERENT, YOUR HONOR, THAN

10   THIS CIRCUMSTANCE WHERE YOU ARE DEALING WITH A

11   SOPHISTICATED INTERNATIONAL PLAINTIFF DOING BUSINESS IN

12   THIS CASE AND WITH A TRADE ASSOCIATION.

13                BUT MORE FUNDAMENTALLY --

14           THE COURT:  WHY DOES THAT MATTER IN TERMS OF

15   ANALYZING THE ANTITRUST ISSUE?

16           MR. DUCKERS:  I THINK IT PUTS IT INTO CONTEXT.

17                NOW LET ME NOW TALK ABOUT THE ANTITRUST

18   ISSUES.  IT'S SORT OF A PRACTICAL OBSERVATION, YOUR

19   HONOR, THAT, IN WARD, YOU HAD THE NINTH CIRCUIT LOOKING

20   AT A CONSUMER CLASS ACTION.  THAT BECAUSE OF

21   ARBITRATION CLAUSES AND CLASS WAIVERS IN THEM, IT

22   EFFECTIVELY WOULD HAVE BEEN DEAD.  IT COULDN'T HAVE

23   BEEN ARBITRATED.  IT WOULD NOT -- IT WOULD NOT HAVE

24   BEEN ECONOMIC TO ARBITRATE THEM, UNLIKE THIS CASE WHERE

25   IT CLEARLY WOULD BE ECONOMIC TO ARBITRATE THIS CASE FOR
```

```
1    TRADELINE.  THEY SOUGHT TO ARBITRATE THIS CASE THREE

2    YEARS AGO AND THEN ABANDONED THAT EFFORT.

3              THE COURT:  WARD DOESN'T SAY THAT, DOES IT?

4              MR. DUCKERS:  EXCUSE ME?

5              THE COURT:  THE APPLE CASE DOESN'T SAY THAT,

6    DOES IT?

7              MR. DUCKERS:  NO.

8                 I MEAN, IT DOESN'T SAY IT IN SO MANY

9    WORDS, BUT IT DESCRIBES THE NATURE OF THE CASE.

10             THE COURT:  OKAY.  GO AHEAD.

11             MR. DUCKERS:  AND I'M JUST SPEAKING AS A

12   PRACTICAL LAWYER UNDERSTANDING THE IMPLICATIONS OF

13   THAT.

14             THE COURT:  I UNDERSTAND THE ARGUMENT.  I JUST

15   WANTED TO MAKE SURE I -- WE WERE CLEAR THAT IT WAS AN

16   ASSUMPTION ABOUT HOW THE CASE SHOULD BE APPLIED AS

17   OPPOSED TO SOMETHING THE CASE SAID.

18             MR. DUCKERS:  IT IS AN INTERPRETATION OF THE

19   CASE IN LIGHT OF THE FACTS.

20             THE COURT:  OKAY.

21             MR. DUCKERS:  YOUR HONOR, IN THE NINTH

22   CIRCUIT, THE ONLY ARGUMENT THAT WAS MADE AS TO HOW AT&T

23   WOULD BE HURT OR HARMED BY THE CASE GOING FORWARD, WHY

24   IT WOULD CLAIM AN INTEREST IS, IT WOULD BE SUBJECT TO

25   ADDITIONAL REGULATORY SCRUTINY UNDER THE ANTITRUST
```

1   LAWS, AND THAT IT WOULD SUFFER SOME SORT OF

2   REPUTATIONAL DAMAGE.

3         AND THE HOLDING OF WARD IS REALLY VERY

4   LIMITED WHERE THE NINTH CIRCUIT SAYS, THAT'S NOT ENOUGH

5   TO CLAIM AN INTEREST IN A CASE.  THAT HAS NO

6   APPLICATION HERE.

7         SUPIMA'S BUSINESS IS THE PROMOTION OF THE

8   SUPIMA BRAND.  IT IS AN ORGANIZATION OF COTTON GROWERS

9   WHO GROW AMERICAN EXTRA-LONG STAPLE COTTON, WHICH IS

10  BRANDED "SUPIMA" AND MARKETED AROUND THE WORLD.

11        DAMAGE TO THE SUPIMA BRAND ISN'T

12  REPUTATIONAL DAMAGE TO SUPIMA ASSOCIATION.  IT GOES TO

13  THE HEART OF THE REASON FOR THE ASSOCIATION'S

14  EXISTENCE.  IT'S ABSOLUTELY DEVASTATING.

15        IF IT CAN'T CONTROL WHO OPERATES USING

16  THAT BRAND, IT RISKS COMPLETELY DEVALUING THE BRAND AND

17  DESTROYS ITS BUSINESS.

18        WE'RE NOT HERE ADVANCING THE SORT OF THIN

19  AND FLIMSY ARGUMENTS THAT APPLE WAS ADVANCING FOR WHY

20  AT&T SHOULD BE INCLUDED IN THAT CASE.

21        WE'RE HERE SAYING TO THE COURT, YOUR

22  HONOR, THIS GOES TO THE VERY HEART OF THE REASON FOR

23  THE SUPIMA ASSOCIATION'S EXISTENCE.  IT'S WHAT IT DOES.

24  IT HAS TO PROTECT THE BRAND.  IT TERMINATED TRADELINE'S

25  LICENSE, AS WE POINT OUT IN THE MATERIALS, BECAUSE IT

```
 1    WAS SELLING ADULTERATED PRODUCT AND BECAUSE IT

 2    DEFAULTED ON CONTRACTS.  AND THOSE ARE THE SORTS OF

 3    ACTIONS THAT A TRADE ASSOCIATION TAKES TO PROTECT THE

 4    VALUE OF ITS BRAND AND TO PROTECT ITS MEMBERS.  AND IF

 5    THAT IS TAKEN AWAY FROM IT IN A PIECE OF LITIGATION, AS

 6    COULD HAPPEN HERE, THEN IT IS BEING SIGNIFICANTLY

 7    INJURED.

 8         THE COURT:  JUST A MINUTE.

 9              LET ME MAKE SURE I UNDERSTAND SOMETHING.

10    IN THE PRAYER FOR RELIEF IN A COMPLAINT, IS IT YOUR

11    POSITION THAT THAT'S SEEKING RELIEF OTHER THAN MONETARY

12    RELIEF?

13         MR. DUCKERS:  IT ASKS FOR SUCH OTHER AND

14    FURTHER RELIEF AS THE COURT MIGHT BE WILLING TO GRANT.

15    SO IT GOES BEYOND MONETARY RELIEF.

16              WHETHER THEY'RE GOING TO ASK THIS COURT

17    TO ORDER SUPIMA TO REINSTATE THEIR LICENSE, I DON'T

18    KNOW.

19         THE COURT:  WHAT I WANT TO UNDERSTAND WITH

20    RESPECT TO YOUR ARGUMENT IS, THE INJURY TO SUPIMA THAT

21    YOU -- IN OTHER WORDS, YOU ARE CONTENDING THAT SUPIMA

22    IS IN FACT AN INDISPENSABLE PARTY UNDER RULE 19.

23         MR. DUCKERS:  YES, YOUR HONOR.

24         THE COURT:  WHAT I WANT TO UNDERSTAND -- MAKE

25    SURE I HAVE A CLEAR UNDERSTANDING OF IS, WHAT IS THE
```

```
1    INJURY TO SUPIMA THAT YOU CONTEND WOULD -- LET'S
2    SUPPOSE, HYPOTHETICALLY, THAT THE PLAINTIFFS STIPULATE
3    THEY WILL NOT BE SEEKING MONETARY RELIEF FROM SUPIMA.
4              WHAT INJURY TO SUPIMA WOULD RESULT IF THE
5    PLAINTIFF PREVAILS ON THE ANTITRUST CLAIMS?
6              MR. DUCKERS:  WELL, THE INJURY TO SUPIMA THAT
7    WOULD RESULT WOULD BE IF THEY WERE, IN ONE WAY OR
8    ANOTHER, FORCED TO RENEW TRADELINE'S LICENSE.
9              AND I DON'T KNOW THAT MR. SUPRENANT CAN
10   STAND IN THIS COURTROOM TODAY AND SIMPLY AS A LAWYER
11   STIPULATE THAT, SOME DAY DOWN THE ROAD, TRADELINE WOULD
12   NOT TAKE A VERDICT IN THIS CASE AND WALK INTO A COURT
13   IN ARIZONA AND SAY, "YOU ARE COLLATERALLY ESTOPPED FROM
14   EVEN LITIGATING THIS CASE BECAUSE YOU ARE A
15   CO-CONSPIRATOR.  AS FOUND IN THIS VERDICT, YOU ARE IN
16   PRIVITY WITH THE DEFENDANTS.  YOUR INTERESTS WERE
17   ABSOLUTELY REPRESENTED."
18             I DON'T THINK -- I MEAN, I WOULD WELCOME
19   THE STIPULATION, BUT I DON'T THINK A STIPULATION CAN
20   ABSOLUTELY PROTECT SUPIMA FROM THAT RISK.
21             AND, OF COURSE, AS YOUR HONOR NOTED WITH
22   RESPECT TO THE TWO ISSUES WE'RE ARGUING, THE ONLY
23   REASON SUPIMA IS NOT HERE IS BECAUSE, IF THEY WERE
24   HERE, THEY CLEARLY WOULD GO TO ARBITRATION.  AND WE
25   WOULD GO ALONG WITH THEM.  AND TRADELINE HAS ADMITTED
```

```
1    AS MUCH BY DEMANDING ARBITRATION FROM SUPIMA.

2              SO WITH RESPECT TO THE MOTION TO COMPEL

3    ARBITRATION, YOUR HONOR, WE'LL BRIEF THOSE CASES.

4              THE COURT:  AND I WANT TO BE CLEAR, I WANT YOU

5    TO LOOK AT THOSE CASES.  AND I -- IF THERE ARE OTHER

6    CASES THAT CITE THOSE CASES THAT EITHER SIDE THINKS ARE

7    RELEVANT, LET ME KNOW.

8              MR. DUCKERS:  WE WILL SCORCH THE EARTH, YOUR

9    HONOR.  OR AT LEAST WEST LAW, MAYBE NOT THE WHOLE

10   EARTH.

11             THE COURT:  THAT'S FINE.  NOT THE WHOLE EARTH.

12             BUT, TO BE CLEAR, I ALREADY -- WHAT I'M

13   LOOKING FOR IS INCISIVE ANALYSIS.  I ALREADY KNOW THAT

14   THE PLAINTIFF IS GOING TO TELL ME THAT

15   WHOLESALE SUPERSEDES PRM, AND WHOLESALE IS AN ANTITRUST

16   CASE, AND THAT'S ALL THERE IS TO IT.

17             MR. DUCKERS:  YOU NEED AN ANALYSIS OF THE

18   FACTS AS IT APPLIES TO THOSE CASES.

19             THE COURT:  I WANT TO KNOW HOW YOU EACH

20   ANALYZE THESE CASES.

21             MR. DUCKERS:  AND YOUR QUESTION TO

22   MR. SUPRENANT JUST A FEW MOMENTS AGO IS PRECISELY THE

23   TRACK WE'RE ON WHERE YOU ASKED HIM, "IF THE LICENSE HAD

24   NEVER BEEN TERMINATED, WOULD THERE BE A CAUSE OF

25   ACTION?"  AND THAT REALLY GOES TO THE EXACT HEART OF
```

```
1    THE MATTER.  THIS IS ALL ABOUT THE SUPIMA LICENSE

2    TERMINATION.  EVERYTHING ABOUT THIS CASE IS INTEGRALLY

3    INTERTWINED WITH THAT LICENSE AND ITS REVOCATION.

4                    YOU'RE QUITE CORRECT, YOUR HONOR, THIS

5    DISPARAGEMENT NOTION THAT'S EXPRESSED MAY BE SOME SORT

6    OF CAUSE OF ACTION, BUT IT'S NOT A SECTION 1 OF A

7    SHERMAN ACT CAUSE OF ACTION AS TO ANY OF THESE

8    DEFENDANTS.

9                    I WOULD JUST SAY, YOUR HONOR -- AND WE'LL

10   BRIEF THAT.

11                   I WOULD ASK THE COURT IF YOU WOULD BE

12   WILLING TO TAKE ANOTHER LOOK AT THE ARBITRATION

13   PROVISION IN THE JESS SMITH CONTRACTS.  IT IS NOT

14   LIMITED, YOUR HONOR.  THAT PROVISION SAYS ANY DISPUTE

15   GOES TO THE ICA.  AND I KNOW THEY CITED YOU SOME

16   CASES --

17          THE COURT:  THERE'S THIS LONG, HARD TO READ

18   BECAUSE IT'S SMALL, PARAGRAPH.  IT'S JUST GOT ALL OF

19   THESE THINGS IN IT.  AND ONE OF THE PHRASES IS ABOUT

20   ARBITRATION.  IT'S NOT LIKE A SEPARATE ARBITRATION

21   CLAUSE.

22          MR. DUCKERS:  WELL, IT'S AN ARBITRATION CLAUSE

23   THAT WAS INVOKED AND USED BY THE PLAINTIFF.

24          THE COURT:  WELL, YES, AS TO A DISPUTE OVER A

25   PARTICULAR SALE -- PURCHASE AND SALE OF GOODS.
```

```
 1              MR. DUCKERS:  SO YOU'VE GOT TWO ISSUES.  IS IT
 2    A VALUED ARBITRATION CLAUSE?  YES, IT IS.  IT HAS BEEN
 3    USED.
 4              SECOND, WHAT IS THE SCOPE OF IT NOW THAT
 5    WE'VE ESTABLISH IT'S VALID?  ITS SCOPE ON THE PLAIN
 6    LANGUAGE OF THE ARBITRATION CLAUSE IS UNLIMITED.
 7              THE CASES THAT WERE CITED TO YOU BY THE
 8    PLAINTIFF ALL INVOLVE LIMITING LANGUAGE WHERE THE COURT
 9    HELD THAT ARBITRATION WAS JUST LIMITED TO ISSUES THAT
10    AROSE UNDER THE CONTRACT.  THAT'S NOT THE CASE HERE,
11    YOUR HONOR.
12              THIS IS AN AGREEMENT BY TRADELINE -- AND
13    BEAR IN MIND TOO, YOUR HONOR, THESE ARE INTERNATIONAL
14    CONTRACTS.  THE COTTON BUSINESS IS INTERNATIONAL.  THE
15    FACT THAT PARTIES WOULD AGREE TO HAVE THEM ARBITRATED
16    IN LONDON BEFORE AN INTERNATIONAL TRIBUNAL WITH
17    EXPERTISE IN THE COTTON INDUSTRY IS PERFECTLY LOGICAL.
18    IT IS -- AND SO WHAT YOU REALLY HAVE, IF YOU READ
19    TRADELINE'S OPPOSITION TO THE MOTION TO COMPEL
20    ARBITRATION UNDER THE JESS SMITH CONTRACTS, IS AN
21    ARGUMENT IN WHICH THEY SAY, "WELL, YES, WE AGREED TO
22    ARBITRATE ANY DISPUTE.  BUT NOW THAT WE WANT TO BRING
23    AN ANTITRUST CASE IN FRONT OF A JURY IN LOS ANGELES, WE
24    DON'T LIKE THAT SO MUCH, AND YOU SHOULD CONCLUDE THAT
25    THAT'S NOT WHAT WE EVER INTENDED TO DO."  BUT THEY
```

```
1    DON'T CITE ANY AUTHORITY FOR ANY OF THOSE ARGUMENTS.
2    AND IT'S SIMPLY AN AFTER-THE-FACT ATTEMPT BY THE
3    PLAINTIFF TO SAY, "HEY, NOW THAT WE LOOK AT IT AGAIN,
4    WE DIDN'T REALLY MEAN TO DO THIS."  BUT THEY DID IT.
5              THE COURT:  JUST A MINUTE.
6                   DO YOU KNOW WHERE IN THE RECORD THAT
7    ARBITRATION AGREEMENT IS ATTACHED AS AN EXHIBIT?
8              MR. DUCKERS:  YOUR HONOR, IT WOULD BE ATTACHED
9    TO THE DECLARATION OF ERNIE SCHROEDER, WHICH WAS FILED
10   IN SUPPORT OF THE MOTION TO COMPEL ARBITRATION.
11                  IF YOU'LL GIVE ME A SECOND, I'LL GO OVER
12   TO THE NOTEBOOK AND SEE IF I CAN FIND IT EXACTLY.
13             THE COURT:  IS IT DOCKET 18?
14             MR. DUCKERS:  DOCUMENT 18 IS THAT DECLARATION.
15             THE COURT:  WELL --
16             MR. DUCKERS:  BUT I'M ACTUALLY NOT SURE -- I'M
17   ACTUALLY NOT SURE I'M SEEING -- I SEE.
18                  YOUR HONOR, IT'S ACTUALLY -- IT'S
19   DOCUMENT 18.
20                  AND THE SALES CONTRACTS, YOUR HONOR,
21   EXHIBIT A, B, C AND D TO DOCUMENT 18.
22             THE COURT:  I'M LOOKING AT DOCUMENT 18-3,
23   WHICH IS ONE OF THOSE EXHIBITS.  IT'S THE NOVEMBER 12,
24   2010 AGREEMENT, AMENDED NOVEMBER 16, 2010.
25                  DO YOU HAVE THAT?  IT SAYS "SALES
```

```
 1    CONTRACT."

 2              MR. DUCKERS:  I COULDN'T QUITE HEAR YOU, YOUR

 3    HONOR?

 4              THE COURT:  DOCUMENT 18-3 IS DATED -- IT'S

 5    CALLED "SALES CONTRACT," JESS SMITH & SONS COTTON LLC,

 6    SALES CONTRACT, NOVEMBER 12, 2010, AMENDED NOVEMBER 16,

 7    2010.

 8              DO YOU HAVE THAT?

 9              MR. DUCKERS:  LET ME FIND THAT, YOUR HONOR.

10              I HAVE -- I HAVE 18-3.

11              THE COURT:  OKAY.  AND THEN UNDER WHERE IT

12    SAYS "REMARKS," DO YOU HAVE THAT?

13              MR. DUCKERS:  I'M LOOKING AT IT, YOUR HONOR.

14              THE COURT:  SO DO YOU HAVE WHERE IT SAYS UNDER

15    "REMARKS," ALL THAT TEXT AND ALL CAPITAL LETTERS?

16              MR. DUCKERS:  YES, YOUR HONOR.  I SEE THAT.

17              THE COURT:  AND ABOUT MIDWAY DOWN, THERE'S A

18    LINE THAT BEGINS, "THE ORIGINAL SALES CONTRACT,"

19    PERIOD, AND THEN, "SELLER'S OPTION TO SELECT."

20              MR. DUCKERS:  RIGHT.

21              THE COURT:  THAT'S THE ARBITRATION CLAUSE TO

22    WHICH YOU'RE REFERRING; CORRECT?

23              MR. DUCKERS:  IT'S THE ARBITRATION CLAUSE IN

24    THIS CONTRACT, YOUR HONOR.  YES, IT IS.

25              AND UP ABOVE WHERE IT SAYS,
```

```
 1         "ARBITRATION," IT ALSO SAYS, "THIS CONTRACT IS GOVERNED

 2    IN ITS ENTIRETY BY THE RULES AND REGULATIONS OF THE

 3    INTERNATIONAL COTTON ASSOCIATION UNDER ENGLISH LAW AND

 4    JURISDICTION."

 5              THE COURT:  THAT WOULD BE HOW THE -- THAT

 6    WOULDN'T BE ABOUT THE SCOPE OF THE ARBITRATION.  THAT

 7    WOULD BE THE PROCESS OF ARBITRATION?

 8              MR. DUCKERS:  THAT'S CORRECT, YOUR HONOR.

 9                   AND IT'S IMPORTANT TO DISTINGUISH "SCOPE"

10    FROM "PROCESS," AS WE POINTED OUT.

11              THE COURT:  OKAY.

12              MR. DUCKERS:  BUT WE WILL DO THE SUPPLEMENTAL

13    BRIEFING THAT YOUR HONOR HAS REQUESTED.

14                   THANK YOU.

15              MR. WOODS:  BRIEFLY, YOUR HONOR?

16              THE COURT:  YES.  GO AHEAD.

17                   OH, SORRY, YOU HAVE SOMETHING TO ADD?

18              MR. WOODS:  YES, I DO.

19              THE COURT:  I DIDN'T MEAN TO --

20              MR. WOODS:  JUST ONE ADDITIONAL POINT, YOUR

21    HONOR, EVEN THOUGH IT'S NOT OUR MOTION.  BUT ON THE

22    QUESTION YOU ASKED ABOUT INDISPENSABLE PARTY, ONE OTHER

23    THING TO CONSIDER IS, IN ANALYZING A POSSIBLE INJURY TO

24    SUPIMA, THE PRAYER OF THE COMPLAINT, PARAGRAPH 1, ASKS

25    FOR A FINDING THAT THE DEFENDANTS AND OTHERS,
```

```
1    INCLUDING, I PRESUME, THE ALLEGED CO-CONSPIRATOR,

2    VIOLATES SECTION 1 OF THE SHERMAN ACT.  AND SO THERE

3    WOULD BE -- WHETHER IT IS ENTITLED TO COLLATERAL

4    ESTOPPEL EFFECT OR NOT, A COURT JUDGMENT THAT THE

5    SUPIMA ASSOCIATION AS A CO-CONSPIRATOR WITH OTHER

6    DEFENDANTS VIOLATED SECTION 1, I WOULD ASSUME THAT THE

7    SUPIMA ASSOCIATION WOULD BELIEVE THAT TO BE AN INJURY

8    TO IT.

9            THE COURT:  HOW IS THAT DIFFERENT THAN WHAT

10   AT&T WOULD CLAIM AS ITS POTENTIAL INJURY IF IT WERE

11   FOUND TO BE A CO-CONSPIRATOR IN THE APPLE CASE?

12           MR. WOODS:  I DON'T KNOW, YOUR HONOR.  BUT I

13   ASSUME THAT THAT WOULD CONSTITUTE SOME FORM OF INJURY

14   TO THE SUPIMA ASSOCIATION.

15           THE COURT:  OKAY.  JUST A MINUTE.  WE HAVE A

16   TECHNICAL DIFFICULTY.

17              (PAUSE IN THE PROCEEDINGS)

18           THE COURT:  OKAY.  ANYTHING FURTHER?

19              GO AHEAD, PLEASE.

20           MR. WOODS:  JUST A FOLLOW-UP THOUGHT TO YOUR

21   QUESTION ABOUT THE APPLE CASE.  WHILE COUNSEL FOR

22   PLAINTIFF IS POSSIBLY STIPULATING THAT A JUDGMENT

23   AGAINST THE DEFENDANTS THAT WOULD NOT HAVE RES JUDICATA

24   OR COLLATERAL ESTOPPEL EFFECT AGAINST SUPIMA

25   ASSOCIATION, THAT'S NOT TO SAY THAT OTHERS IN THE
```

```
1    MARKET MIGHT NOT USE IT THAT WAY OR ATTEMPT TO USE IT
2    THAT WAY.
3              BUT WE'RE HAPPY TO BRIEF THE ARBITRATION
4    ISSUE, YOUR HONOR.
5              I WOULD POINT OUT ONE THING.  WE'RE HAPPY
6    TO ANALYZE THESE CASES BECAUSE OUR CLIENT, J.G.
7    BOSWELL, IS IN A VERY UNIQUE SITUATION HERE.  AND
8    COUNSEL'S OWN ARGUMENT ABOUT THE AMERICAN BANKERS CASE
9    SHOWS WHY THIS CASE SHOULD BE IN ARBITRATION AS TO OUR
10   CLIENT.  WHAT COUNSEL SAID WAS, THAT THE HOLDING
11   REQUIRES THAT THE UNDERLYING CONTRACT INVOLVED ALLEGED
12   BREACHES OF OBLIGATIONS AND DUTIES UNDER THE CONTRACT
13   IN ORDER FOR IT TO BE ARBITRATED.  AND THAT'S EXACTLY
14   WHAT THE COMPLAINT ALLEGES AGAINST OUR CLIENT.
15             THE COMPLAINT ALLEGES THAT THE SUPIMA
16   ASSOCIATION BREACHED THE LICENSE AGREEMENT IN MANY
17   DIFFERENT WAYS, ALL OF WHICH ARE PARTICULARIZED.
18             IT THEN ALLEGES, AND THE ONLY BASIS FOR
19   THE COMPLAINT AGAINST OUR CLIENT IS THAT A
20   REPRESENTATIVE OF OUR CLIENT WAS THE CHAIRMAN OF THE
21   BOARD OF THE ASSOCIATION DURING THE RELEVANT TIME AND
22   STEERED, GUIDED AND CONTROLLED THE ASSOCIATION TO STRIP
23   TRADELINE OF ITS LICENSE IN VIOLATION OF THAT
24   AGREEMENT.  AND SO THAT WILL BE THE ARGUMENT TO SHOW
25   WHY OUR MOTION TO STAY THE CASE PENDING ARBITRATION
```

```
1    SHOULD BE GRANTED.

2              AND WE LOOK FORWARD TO BRIEFING THAT --

3         THE COURT:  FOCUS ON THAT WHEN YOU DISCUSS THE

4    BRIEFING IN TERMS OF HOW THE EIGHTH CIRCUIT

5    DISTINGUISHED THE TWO CASES.  I WANT TO HEAR FROM YOU

6    ON THAT.  AGAIN, YOU HAVEN'T READ THE CASES, SO I DON'T

7    WANT TO GET INTO IT YET.

8         MR. WOODS:  WE WILL, YOUR HONOR.  THANK YOU.

9         MR. SUPRENANT:  BRIEFLY, YOUR HONOR?

10             WITH RESPECT TO THE NECESSARY PARTY

11   MOTION, WE WERE TOLD BY JESS SMITH'S COUNSEL HOW

12   IMPORTANT THIS CASE -- HOW RISKY AND THREATENING THIS

13   CASE IS TO THE ASSOCIATION.  THERE'S NOT A LAWYER FROM

14   THE SUPIMA ASSOCIATION HERE.  THEY DIDN'T FILE A

15   DECLARATION.

16             IN WARD VERSUS APPLE - AND WE ARGUED THIS

17   IN OUR OPPOSITION - IT SAID THAT THE FIRST STEP

18   REQUIRES IDENTIFYING THE SPECIFIC INTEREST THE ABSENT

19   PARTY CLAIMS.  THERE'S BEEN NO CLAIM BY SUPIMA

20   ASSOCIATION THAT THEY HAVE ANY INTEREST.  THAT IS AT

21   791 F.3D. 1049.

22             "JOINDER" -- THIS IS A QUOTE, "JOINDER IS

23   CONTINGENT UPON AN INITIAL REQUIREMENT THAT THE ABSENT

24   PARTY CLAIM A LEGALLY-PROTECTED INTEREST."  THAT'S AT

25   1051.  AND SO YOUR HONOR HAS NO SHOWING WHATSOEVER THAT
```

```
1      THE ASSOCIATION REQUIRES -- I MEAN, HAS CLAIMED AN

2      INTEREST.

3              IN THE REPLY, THEY CITE TWO CASES

4      INVOLVING NATIVE-AMERICAN TRIBAL SOVEREIGNS WHO DID NOT

5      APPEAR.  BUT WHAT THE COURT SAID IS, "AS SOVEREIGNS,

6      THEY DON'T HAVE TO APPEAR" AND FOUND THAT THEY WERE

7      NECESSARY PARTIES.

8              SO THE MOTION FAILS JUST AT THE OUTSET

9      BECAUSE SUPIMA HAS NOT CLAIMED ANY PROTECTED INTEREST.

10             EVEN IF THEY HAD --

11      THE COURT:  DO YOU CONTEND THAT APPLE STANDS

12      FOR THE PROPOSITION THAT THEY HAVE TO SUBMIT EVIDENCE?

13      MR. SUPRENANT:  NO.  BUT THEY HAVE TO COME

14      FORWARD AND SAY, "YOUR HONOR, I REPRESENT SUPIMA

15      ASSOCIATION.  I HAVE READ THE COMPLAINT, AND THESE ARE

16      REASONS THAT WE THINK" --

17      THE COURT:  I SEE.

18              AND THAT ARGUMENT CAN'T BE ADVANCED BY

19      ANOTHER PARTY WHO IS A MEMBER OF THE ASSOCIATION?

20      MR. SUPRENANT:  NOT AS I READ WARD.  IT

21      SAYS --

22      THE COURT:  IN WARD, THERE WAS NO

23      RELATIONSHIP, OTHER THAN CONTRACTUAL, BETWEEN APPLE AND

24      AT&T; CORRECT?

25      MR. SUPRENANT:  THAT'S CORRECT, YOUR HONOR.
```

```
1              THE COURT:  AND, HERE, THERE IS A RELATIONSHIP

2    BECAUSE ONE OF THE CO-DEFENDANTS IS THE -- WAS OR IS

3    THE CHAIR OF THE ASSOCIATION.

4              MR. SUPRENANT:  WHICH SHOULD HAVE MADE IT

5    EASIER, I WOULD THINK, YOUR HONOR, FOR THEM TO APPEAR

6    AND SAY, "WE ARE" -- OR AT LEAST PUT IN A DECLARATION.

7    THEY DON'T HAVE TO -- THEY DON'T HAVE TO COME HERE, BUT

8    THEY HAVE TO PUT IN A DECLARATION HOW THEIR INTERESTS

9    WOULD BE HARMED BY THIS LITIGATION GOING FORWARD.

10             THE COURT:  WELL, THAT WAS MY QUESTION.

11                  JUST A SECOND.

12                  DEFENDANT NEUFELD IS A BOARD MEMBER.  AND

13   DEFENDANT ELDER IS A BOARD MEMBER, WAS THE CHAIR.

14   EITHER -- WHETHER IT'S PRESENT TENSE OR PAST TENSE, IT

15   DOESN'T MATTER.  THAT'S WHY I ASKED MY QUESTION A

16   COUPLE OF QUESTIONS AGO.

17                  IS IT REQUIRED THAT EVIDENCE BE PRESENTED

18   AS OPPOSED TO ARGUMENT?  IS THAT WHAT YOUR POINT IS?

19             MR. SUPRENANT:  MY POINT IS, AS I THINK WHAT

20   THEY HAD IN APPLE WAS AN AFFIDAVIT OR A DECLARATION

21   FROM COUNSEL FOR AT&T IDENTIFYING THEIR INTEREST IN THE

22   CASE.

23                  AND I DON'T THINK THEY HAVE TO APPEAR

24   AS A --

25             THE COURT:  NO, I UNDERSTAND.
```

1    I JUST WANT TO KNOW WHETHER YOU THINK

2    APPLE STANDS FOR THE PROPOSITION THAT YOU HAVE TO

3    SUBMIT EVIDENCE IN THE FORM OF A DECLARATION AS OPPOSED

4    TO ARGUMENT BASED ON THE ASSOCIATION'S STRUCTURE.

5         MR. SUPRENANT:  IT WOULDN'T BE ARGUMENT; BUT

6    IT WOULD SAY, "I'M AUTHORIZED TO SPEAK FOR THE

7    ASSOCIATION" --

8         THE COURT:  I UNDERSTAND THAT.

9              THAT'S EVIDENCE, ISN'T IT?

10             IF IT IS A DECLARATION, ISN'T THAT

11   EVIDENCE?

12        MR. SUPRENANT:  IT IS, YOUR HONOR.  I WAS

13   MISSING YOUR HONOR'S QUESTION.

14             SO IT WOULD REQUIRE A DECLARATION.

15   "EVIDENCE," I WAS THINKING LIKE ATTACH EXHIBITS AND

16   STUFF.  IT SIMPLY HAS TO IDENTIFY THE INTEREST IT HAS.

17             BUT WHAT THEY FOUND IN APPLE, OF COURSE,

18   IS THAT JOINT TORTFEASORS ARE JOINT AND SEVERAL

19   LIABILITIES.  AND PERMISSIVE PARTIES IS THE HOLDING

20   ABSENT NARROW CIRCUMSTANCES, NOT PRESENT HERE.  THAT'S

21   AT 1048.

22             AND THEIR INTEREST IN THE BRAND, YOUR

23   HONOR, IS THE VERY REPUTATIONAL INTEREST THAT WARD SAID

24   DOES NOT COUNT.  IT SAYS THAT, "YEAH" -- MR. WOODS'

25   POINT, "YEAH, IF YOU'RE FOUND TO BE A JOINT TORTFEASOR,

```
1    THAT'S PROBABLY NOT GOING TO BE GOOD FOR YOUR

2    REPUTATION."  BUT ABSENT ISSUE PRECLUSION, ABSENT

3    COLLATERAL ESTOPPEL, THERE IS NO BASIS.

4              BUT LET ME MOVE ON, YOUR HONOR, UNLESS

5    YOUR HONOR HAS QUESTIONS, TO THE ARBITRATION ISSUE.

6         THE COURT:  BRIEFLY.

7              GO AHEAD.

8              I THINK I UNDERSTAND THE ISSUE.

9         MR. SUPRENANT:  OKAY.  YOUR HONOR, I --

10        THE COURT:  IF THERE'S SOMETHING NEW THAT I

11   HAVEN'T HEARD.

12             LET ME ASK YOU THIS -- WELL, LICENSE

13   RENEWAL, IS THAT A REMEDY YOU MIGHT SEEK?

14        MR. SUPRENANT:  WE WILL NOT SEEK, WE DO NOT

15   SEEK -- I SAID IT SEVERAL TIMES IN THE OPPOSITION.

16             OUR SUPIMA BUSINESS -- WE HAVE TWO

17   BUSINESSES.  THE TRADELINE HAS BEEN A SPINNER IN INDIA

18   FOR THREE GENERATIONS.

19             BEGINNING IN 2008, IT SPENT $10 MILLION

20   TO START A SUPIMA EXTRA-LONG STAPLE FACTORY.  THAT

21   HAS -- THAT BUSINESS HAS BEEN DESTROYED.  WE'RE SEEKING

22   MONEY DAMAGES.  WE'RE NOT SEEKING THE LICENSE.  WE WILL

23   NOT SEEK THE LICENSE.  THAT IS SIMPLY AN ARGUMENT THAT

24   DEFENDANTS --

25        THE COURT:  DO YOU HAVE A VIEW ON THE OTHER
```

 1    ISSUE THAT WAS RAISED?

 2              AND THAT IS, AS TO A NON-PARTY TO THE

 3    LITIGATION, IF THERE WERE ANOTHER SPINNER OR OTHER

 4    PARTY, NOT TO THE -- PARTY TO THE LITIGATION, AND THE

 5    LITIGATION WENT TO JUDGMENT ADVERSE TO THE SUPIMA

 6    ASSOCIATION, COULD THAT NON-PARTY ASSERT COLLATERAL

 7    ESTOPPEL EVEN IF PLAINTIFFS HERE HAD FOREGONE THAT

 8    OPPORTUNITY WITH RESPECT TO DAMAGES?

 9              MR. SUPRENANT:  THE REASON -- NO, YOUR HONOR.

10    THE ANSWER IS, NO.

11              AND THE REASON THAT WE'LL STIPULATE THAT

12    THEY'RE NOT GOING TO BE BOUND IS, THEY WOULDN'T.  UNDER

13    THE LAW, THEY WOULDN'T BE BOUND BECAUSE THEY'RE NOT

14    HERE REPRESENTED.

15              AND, MOREOVER, THE NATURE OF THIS

16    CONSPIRACY IS TARGETED RIGHT AT OUR CLIENT.

17              IN OTHER WORDS, THERE'S NOBODY WHO CAN

18    COME UNDER THE UMBRELLA AND SAY, "ME TOO."  THAT'S NOT

19    THE NATURE OF THE CONSPIRACY.

20              THANK YOU, YOUR HONOR.

21              THE COURT:  ALL RIGHT.  LET ME TURN TO THE

22    SCHEDULING ISSUES.

23              DO YOU EACH HAVE THE EXHIBIT A TO YOUR

24    REPORT?

25              MR. SUPRENANT:  YES, YOUR HONOR.

```
1              MR. DUCKERS:  YES, YOUR HONOR.

2              MR. WOODS:  YES, YOUR HONOR.

3              MR. DUCKERS:  THAT'S THE TIMETABLE, YOUR

4     HONOR?

5              THE COURT:  CORRECT.

6                   HERE ARE THE DATES THAT I HAVE IN MIND

7     HAVING REVIEWED YOUR REPORT:

8                   LAST DATE TO ADD PARTIES OR AMEND

9     PLEADINGS, JUNE 30, 2016.

10                  NON-EXPERT DISCOVERY CUTOFF, FEBRUARY 10,

11    2017.

12                  EXPERT DISCLOSURE, IF ANY, FEBRUARY 24,

13    2017.

14                  EXPERT REBUTTAL, IF ANY, MARCH 10, 2017.

15                  COMPLETE EXPERT DISCOVERY, MARCH 24,

16    2017.

17                  LAST DATE TO FILE MOTIONS, MARCH 27,

18    2017.

19                  LAST DATE TO HEAR THEM, JUNE 19, 2017.

20                  ANTICIPATED RULINGS, JULY 17, 2017.

21                  FINAL PRETRIAL CONFERENCE AUGUST 28,

22    2017.

23                  AND TRIAL, SEPTEMBER 12, 2017.

24                  IN TERMS OF TRIAL LENGTH, IT'S TOO EARLY

25    TO TELL.  BUT YOU ARE GOING TO HAVE TO DO SOME SERIOUS
```

```
 1    PERSUADING TO PERSUADE ME THAT THIS A MONTH-LONG TRIAL,
 2    WHICH IS WHAT 15 DAYS WOULD MEAN.  BUT THAT'S NOT --
 3              MR. SUPRENANT:  WHAT WAS THE TRIAL DATE AGAIN,
 4    YOUR HONOR?
 5              THE COURT:  SEPTEMBER 12, 2017.
 6              THERE'S SOME -- A LITTLE BIT OF A GAP IN
 7    SOME OF THIS BECAUSE I'M ANTICIPATING -- I MAY BE AWAY
 8    IN PART OF THE SUMMER.
 9              IT'S DIFFERENT -- IT'S NOT EXACTLY WHAT
10    EITHER OF YOU SAID.
11              AND I'M MINDFUL OF THE FOLLOWING:  THAT
12    WITH RESPECT TO THE NON-EXPERT DISCOVERY, INSOFAR AS
13    THERE MAY BY SOME INTERNATIONAL DISCOVERY INVOLVED
14    HERE, WHETHER PRODUCTION OF DOCUMENTS OR DEPOSITIONS OR
15    BOTH, IT MAY TAKE MORE TIME TO GET THINGS DONE.  I
16    RECOGNIZE THAT.  SO MY EXPECTATION IS THAT IF -- AGAIN,
17    THIS ALL ASSUMES THAT I DENY THE MOTION TO COMPEL
18    ARBITRATION.
19              MY EXPECTATION IS THAT YOU'LL WORK
20    COLLABORATIVELY.  YOUR REPORT SHOWED SOME
21    COLLABORATION, BUT I THINK YOU CAN DO EVEN BETTER.  AND
22    TRY TO WORK OUT THESE -- THE DISCOVERY PROCESSES IN A
23    REASONABLE FASHION.
24              IF I'M PERSUADED THAT YOU HAVE DONE THAT,
25    AND THAT YOU JUST CAN'T FINISH BY FEBRUARY 10, 2017
```

```
1    BECAUSE IT TOOK -- IT'S GOING TO TAKE "X" MORE DAYS OR

2    WEEKS GIVEN THE INTERNATIONAL NATURE OF WHAT'S

3    HAPPENED, THEN I'LL EVALUATE THAT BASED ON HAPPENED.

4    SO I'M NOT UNMINDFUL OF THAT.

5              MR. SUPRENANT:  THESE DATES, YOUR HONOR, ARE

6    ACCEPTABLE TO TRADELINE.

7              THE COURT:  MR. DUCKERS?

8              MR. DUCKERS:  YOUR HONOR, IF THAT'S WHAT THE

9    COURT'S PREFERENCE IS, IT'S ACCEPTABLE TO US WITH THE

10   CAVEAT YOU HAD.

11              I DO HAVE SOME REAL CONCERNS WITH THE

12   INTERNATIONAL DISCOVERY.  I DON'T THINK IT'S GOING TO

13   BE SO MUCH AN ISSUE OF COLLABORATION WITH US, BUT

14   HAVING TO GET COLLABORATION FROM FOREIGN GOVERNMENTS,

15   THE HAGUE CONVENTION AND OTHER THINGS, WHICH I'M NOT

16   TERRIBLY FAMILIAR WITH, BUT I UNDERSTAND CAN BE VERY

17   TIME CONSUMING.

18              THE COURT:  DO YOU EXPECT THERE WILL BE

19   TRANSLATION ISSUES?

20              ARE THERE DOCUMENTS -- THE PLAINTIFF HAS

21   DOCUMENTS IN A LANGUAGE OTHER THAN ENGLISH, FOR

22   EXAMPLE?

23              MR. SUPRENANT:  YOUR HONOR, THERE MAY BE SOME

24   REALLY PRETTY MARGINAL TRANSLATION ISSUES, BUT NOT WITH

25   RESPECT TO MY CLIENT.  MY CLIENT CONDUCTS BUSINESS IN
```

```
1    ENGLISH.
2              MR. DUCKERS:  THERE COULD BE WITH SOME THIRD
3    PARTIES.  I KNOW THERE'S --
4              THE COURT:  "NON-PARTIES"?
5              MR. DUCKERS:  YEAH, JAPANESE COMPANIES AND
6    ALSO A PORTUGUESE COMPANY.  THEY E-MAIL IN ENGLISH, BUT
7    WHETHER THE 30(B)(6) FROM THOSE COMPANIES WOULD BE --
8              THE COURT:  I UNDERSTAND.
9              WHAT'S YOUR VIEW ON THIS, MR. WOODS, ON
10   THE DATES?
11             MR. WOODS:  THE DATES ARE ACCEPTABLE, YOUR
12   HONOR.
13             DID YOU WANT TO SET DATES FOR THE
14   BRIEFING SCHEDULE NEXT?
15             THE COURT:  I WANT TO FIRST TALK ABOUT THE
16   SETTLEMENT DATES.
17             FROM YOUR REPORT -- WELL, YOU'RE BOTH
18   PROPOSING THE USE OF AN OUTSIDE NEUTRAL.  AND THE
19   DEFENDANTS ARE PROPOSING EARLY NEUTRAL EVALUATION.
20             IS THAT RIGHT?
21             MR. WOODS:  YES, YOUR HONOR.
22             THE COURT:  IS THAT WHAT YOU'RE ALSO
23   PROPOSING?
24             MR. SUPRENANT:  NO, YOUR HONOR.
25             WE BELIEVE -- GIVEN THE SIZE OF THE CASE
```

```
1   AND THE VERY STARK DIFFERENT VIEWS, WE THINK IT WILL

2   NOT BE VALUABLE.

3            THE COURT:  OKAY.  HAVE YOU DONE AN ENE IN

4   ANOTHER CASE?

5            MR. SUPRENANT:  YES.

6               I MEAN, FOR EXAMPLE, MR. WOODS PROPOSED A

7   SETTLEMENT THAT HE WOULDN'T SUE ME FOR MALICIOUS

8   PROSECUTION.

9            THE COURT:  I DON'T WANT TO HEAR ABOUT --

10  THESE ARE PRIVILEGED COMMUNICATIONS.  I DON'T WANT TO

11  HEAR ABOUT THAT.  SUBSTANCE OF COMMUNICATIONS AREN'T TO

12  BE DISCLOSED.

13               WHAT I'M GETTING AT IS, EARLY NEUTRAL

14  EVALUATION IS A PROCESS THAT IS DESIGNED TO PROVIDE THE

15  PARTIES WITH EARLY NEUTRAL EVALUATION BASED ON --

16  BEFORE YOU HAVE DONE A HUGE AMOUNT OF WORK.  AND

17  IT'S -- IT'S EFFECTIVE IN SOME CASES.

18               IF THAT'S NOT WHAT YOU BOTH WANT TO DO --

19  BECAUSE WHAT THE DEFENDANT HAS PROPOSED IS, YOU DON'T

20  KNOW WHEN A SETTLEMENT CONFERENCE WOULD BE PRODUCTIVE

21  UNTIL WELL AFTER ALL THE MOTIONS ARE DECIDED, I THINK.

22           MR. SUPRENANT:  IN MY EXPERIENCE IN THESE

23  KINDS OF CASES, YOUR HONOR, THE DEFENDANTS ARE

24  UNWILLING TO MEANINGFULLY OFFER REMEDIES UNTIL SUMMARY

25  JUDGMENT IS DENIED AND THE DAUBERT MOTIONS ARE DECIDED.
```

```
1              THE COURT:  WHAT I THINK IS HELPFUL IS WHEN
2     YOU BOTH -- WHAT BOTH SIDES THINK WOULD BE PRODUCTIVE.
3     I DON'T LIKE PEOPLE TO JUST GO TO CONFERENCES TO SHOW
4     UP.  SO I WANT YOU TO BOTH -- WHY DON'T YOU -- HAVE YOU
5     DISCUSSED WHOM YOU MIGHT USE AS A PRIVATE NEUTRAL?
6              MR. SUPRENANT:  WE HAVE NOT.
7              MR. DUCKERS:  NO, YOUR HONOR.
8              THE COURT:  HERE'S WHAT I WOULD LIKE YOU TO
9     DO:  MY VIEW ON THIS IS WHAT I'VE STATED.  YOU HAVE
10    COMPLICATED ISSUES.  YOU HAVE SOPHISTICATED COUNSEL.
11    AND I DON'T WANT -- I'M NOT GOING TO ORDER PEOPLE TO
12    SPEND MONEY TO GO TO A PRIVATE NEUTRAL AND SPEND MONEY
13    JUST CAUSE I SAID YOU HAVE TO.  NO.  I WANT YOU TO DO
14    IT WHEN IT'S PRODUCTIVE.
15              BUT THAT DOESN'T MEAN THAT I'M GOING TO
16    NECESSARILY THINK IT HAS TO BE A YEAR FROM NOW AFTER
17    YOU'VE ALL SPENT A LOT OF MONEY AND I HAVE SPENT A LOT
18    OF TIME WITH YOU, POTENTIALLY, RESOLVING DISPUTES.
19              SO WHY DON'T YOU TALK ABOUT IT SOME MORE
20    AND SEE, IF IN THE CONTEXT OF AGREEING ON A NEUTRAL,
21    WHETHER SOME OTHER DATE WOULD BE SENSIBLE.  BECAUSE
22    EVEN IF I WERE TO CONCLUDE THAT THE MATTER SHOULD BE
23    ARBITRATED, YOU -- YOU WOULDN'T LOSE THE BENEFIT OF
24    HAVING A NEUTRAL, WOULD YOU?  I THINK NOT.
25              SO WHY DON'T YOU TALK MORE ABOUT THAT.
```

```
 1    GIVE ME A REPORT AT THE TIME YOU FILE YOUR SUPPLEMENTAL

 2    BRIEFS AS TO WHERE YOU STAND ON THIS.

 3              MR. DUCKERS:  YES, YOUR HONOR.

 4              THE COURT:  HAVE YOU WORKED TOGETHER ON CASES

 5    BEFORE?

 6              MR. SUPRENANT:  WE HAVE NOT, YOUR HONOR.

 7              THE COURT:  OKAY.  NOW, WITH RESPECT TO THE

 8    BRIEFING, WHAT I HAVE IN MIND IS BRIEFS NOT TO EXCEED

 9    10 PAGES.  I WANT YOU TO BE FOCUSED.  I DON'T NEED

10    TO -- YOU HAVE GIVEN ME, ALREADY, LENGTHY BRIEFS ON

11    YOUR RESPECTIVE POSITIONS AS TO THE FACTS.  SO I WANT

12    YOU TO FOCUS ON THE CASES -- THE TWO THAT I MENTIONED,

13    OTHERS THAT YOU FIND BASED ON THOSE.

14              AS YOU WILL SEE WHEN YOU LOOK AT THEM, AS

15    YOU'VE READ THE OTHER ONES, THEY REFER TO THE SECOND

16    CIRCUIT CASE.  I THINK IT'S THE MERRIL LYNCH CASE.

17    THERE'S SOME OTHER CASES THAT ARE CITED AS SORT OF THE

18    HISTORY.  TAKE A LOOK AT THE CASES AND TELL ME YOUR

19    RESPECTIVE VIEWS ON HOW YOU THINK THEY APPLY OR DON'T

20    APPLY HERE.

21              HOW LONG DO YOU THINK YOU NEED TO DO

22    THAT, A WEEK, TWO WEEKS?

23              MR. SUPRENANT:  A WEEK WOULD BE FINE, YOUR

24    HONOR.

25              THE COURT:  A WEEK, THAT WORK?
```

```
 1            MR. DUCKERS:  I THINK A WEEK WORKS, YOUR

 2   HONOR.

 3            THE COURT:  ALL RIGHT.  FILE THEM NEXT

 4   WEDNESDAY -- NEXT MONDAY.

 5                 IF, WHEN YOU DIG INTO THESE CASES, YOU

 6   CONCLUDE THAT YOU NEED 10 DAYS, NOT 7 DAYS, THEN JUST

 7   SEND -- SUBMIT A STIPULATION.  IT'S NOT MATERIAL TO ME

 8   WHETHER IT'S 7 DAYS OR 10 DAYS.

 9                 WHEN YOU SUBMIT THE -- THE BRIEFS ARE DUE

10   NEXT MONDAY, PROVIDED, HOWEVER, IF THE PARTIES AGREE TO

11   SUBMIT THEM NEXT WEDNESDAY, YOU CAN DO THAT.

12            MR. DUCKERS:  YOUR HONOR, CAN WE JUST MAKE

13   THEM NEXT WEDNESDAY?

14            THE COURT:  LET'S MAKE IT NEXT WEDNESDAY.

15            AT THE SAME TIME BY NEXT WEDNESDAY, GIVE

16   ME AN UPDATE ON THE SETTLEMENT PROCESS ONLY.

17                 ANYTHING ELSE WE NEED TO DO TODAY?

18            MR. SUPRENANT:  NOT FROM US, YOUR HONOR.

19            MR. DUCKERS:  NO, YOUR HONOR.

20            MR. WOODS:  NO, YOUR HONOR.

21            THE COURT:  THANK YOU.

22                 I'LL ISSUE A WRITTEN RULING WITH RESPECT

23   TO THE MOTIONS AFTER I -- I'LL TAKE THEM UNDER

24   SUBMISSION AFTER I RECEIVE YOUR SUPPLEMENTAL BRIEFING.

25            MR. SUPRENANT:  THANK YOU, YOUR HONOR.
```

1          THE COURT:  THANK YOU.

2                  **(END OF PROCEEDINGS)**

1      **CERTIFICATE OF OFFICIAL REPORTER**

2

3    COUNTY OF LOS ANGELES          )
                                    )
4    STATE OF CALIFORNIA           )

5                    I, ALEXANDER T. JOKO, FEDERAL OFFICIAL

6    COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT

7    COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY

8    CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED

9    STATES CODE, THAT THE FOREGOING IS A TRUE AND CORRECT

10   TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED PROCEEDINGS

11   HELD IN THE ABOVE-ENTITLED MATTER, AND THAT THE

12   TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE

13   REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED

14   STATES.

15   DATE:  AUGUST 29, 2018

16

17

18                          /S/ ALEXANDER T. JOKO
                            _____
19                          ALEXANDER T. JOKO, CSR NO. 12272
                            FEDERAL OFFICIAL COURT REPORTER
20

21

22

23

24

25

< DATES >
APRIL 4, 2016
1:30, 3:1
AUGUST 28, 2017
37:21
AUGUST 29, 2018
46:28
FEBRUARY 10,
2017 37:10,
38:25
FEBRUARY 24,
2017 37:12
JULY 17, 2017
37:20
JUNE 19, 2017
37:19
JUNE 30, 2016
37:9
MARCH 10, 2017
37:14
MARCH 24, 2017
37:15
MARCH 27, 2017
37:17
NOVEMBER 12,
2010 26:23,
27:6
NOVEMBER 16,
2010 26:24,
27:6
SEPTEMBER 12,
2017 37:23,
38:5
$10 35:19
/S/ 46:33

< 1 >
1 16:5, 16:6,
24:6, 28:24,
29:2, 29:6
10 43:9, 44:6,
44:8
1041 4:6
1048. 34:21
1049. 31:21
1051. 31:25
10TH 2:7, 2:14
1120 2:20
12(B)(7 9:25,

17:22
12272 1:38,
46:35
15 38:2
18 26:13,
26:14, 26:21
18-3 26:22,
27:4
18-3. 27:10
18. 26:19
19 3:23, 10:21
19. 21:22
1ST 1:40

< 2 >
2000 2:26
2000. 16:18
2008 35:19
2010 5:20
2013. 5:22
210 16:18
28 46:14

< 3 >
30(B)(6 40:7
350 1:40
3D 5:21, 13:23,
31:21

< 4 >
4311 1:40
453 5:23, 13:23

< 5 >
5 3:9
524 16:18
528 16:20
592 5:19

< 6 >
623 5:23
628 13:24

< 7 >

7 44:6, 44:8
707 5:21
753 46:14
791 4:6, 31:21

< 8 >
830 5:19
865 2:6, 2:13
8:30 1:30, 3:4

< 9 >
90012 1:41
90017 2:15
90017-2543 2:8
90017-3383 2:27
919 5:21
94111 2:21

< A >
A. 1:3
ABANDONED 19:2
ABOVE 27:25
ABOVE-ENTITLED
46:20
ABSENT 31:18,
31:23, 34:20,
35:2
ABSOLUTELY
20:14, 22:17,
22:20
ACCEPTABLE
39:6, 39:9,
40:11
ACT 5:15, 24:7,
29:2
ACTION 18:3,
18:20, 23:25,
24:6, 24:7
ACTIONS 21:3
ACTUALLY 5:17,
26:16, 26:17,
26:18
ADD 28:17, 37:8
ADDITIONAL
12:18, 19:25,
28:20
ADDRESS 12:10,

17:5
ADMITTED 13:16,
22:25
ADULTERATED
21:1
ADVANCED 32:18
ADVANCING
20:18, 20:19
ADVERSE 36:5
AFFIDAVIT 33:20
AFTER-THE-FACT
26:2
AGENCY 16:18
AGO 19:2,
23:22, 33:16
AGREE 5:2, 5:7,
25:15, 44:10
AGREED 7:1,
25:21
AGREEING 42:20
AGREEMENT 5:5,
7:9, 7:11,
7:12, 7:14,
7:19, 7:20,
8:3, 10:9,
10:14, 10:15,
14:5, 14:9,
14:13, 15:3,
16:23, 16:25,
25:12, 26:7,
26:24, 30:16,
30:24
AGREEMENTS 8:4,
8:7, 10:8,
10:13
AHEAD 11:25,
19:10, 28:16,
29:19, 35:7
AJ_CSR@YAHOO.CO
M 1:42
AL 1:13
ALEXANDER 1:38,
46:8, 46:33,
46:35
ALLEGATIONS 9:9
ALLEGE 14:6
ALLEGED 8:7,
9:12, 14:3,
14:12, 16:12,
29:1, 30:11

ALLEGES 30:14, 30:15, 30:18
ALREADY 23:12, 23:13, 43:10
AMEND 37:8
AMENDED 26:24, 27:6
AMERICAN 5:23, 6:5, 6:22, 7:1, 12:23, 13:21, 14:9, 15:4, 15:14, 16:20, 20:9, 30:8
AMONG 8:2
AMOUNT 41:16
AN INJURY 29:7
ANALYSIS 4:9, 5:11, 14:15, 23:13, 23:17
ANALYZE 23:20, 30:6
ANALYZING 8:21, 18:15, 28:23
ANGELES 1:28, 1:41, 2:8, 2:15, 2:27, 3:1, 25:23, 46:3
ANSWER 36:10
ANTICIPATED 37:20
ANTICIPATING 38:7
ANTITRUST 4:7, 7:24, 9:1, 18:15, 18:17, 19:25, 22:5, 23:15, 25:23
APPEAL 5:8, 5:12, 8:16
APPEAR 32:5, 32:6, 33:5, 33:23
APPEARANCES 2:1
APPLE 4:6, 4:7, 4:8, 11:7, 11:14, 11:16, 18:7, 19:5, 20:19, 29:11, 29:21, 31:16,

32:11, 32:23, 33:20, 34:2, 34:17
APPLICATION 17:23, 20:6
APPLIED 19:16
APPLIES 5:2, 5:7, 13:20, 18:1, 23:18
APPLY 7:4, 9:15, 17:11, 43:19, 43:20
APPLYING 5:13
APPROACH 8:14
APPROPRIATE 13:14, 13:24
ARBITRABILITY 3:25, 10:18, 10:25
ARBITRATE 5:6, 5:7, 7:19, 7:22, 11:2, 18:24, 18:25, 19:1, 25:22
ARBITRATED 18:23, 25:15, 30:13, 42:23
ARBITRATION 5:1, 5:6, 6:24, 7:19, 8:5, 10:2, 10:6, 10:8, 10:12, 10:14, 12:2, 13:20, 15:9, 18:4, 18:6, 18:21, 22:24, 23:1, 23:3, 24:12, 24:20, 24:22, 25:2, 25:6, 25:9, 25:20, 26:7, 26:10, 27:21, 27:23, 28:1, 28:6, 28:7, 30:3, 30:9, 30:25, 35:5, 38:18
AREA 7:15
ARGUABLY 7:15
ARGUE 11:11

ARGUED 31:16
ARGUING 22:22
ARGUMENT 12:18, 13:1, 14:11, 15:12, 19:14, 19:22, 21:20, 25:21, 30:8, 30:24, 32:18, 33:18, 34:4, 34:5, 35:23
ARGUMENTS 20:19, 26:1
ARISE 15:5
ARISES 14:7
ARIZONA 5:2, 5:7, 5:8, 5:12, 5:14, 8:15, 8:16, 22:13
AROSE 7:16, 25:10
AROUND 18:5, 20:10
ARTFULLY 18:7
ARTIST 16:18
ASKS 21:13, 28:24
ASSERT 36:6
ASSIGNED 14:4
ASSOCIATION 4:2, 4:18, 4:23, 9:12, 10:5, 13:10, 15:8, 18:12, 20:12, 20:13, 20:23, 21:3, 28:3, 29:5, 29:7, 29:14, 29:25, 30:16, 30:21, 30:22, 31:13, 31:14, 31:20, 32:1, 32:15, 32:19, 33:3, 34:4, 34:7, 36:6
ASSUME 29:6, 29:13
ASSUMES 38:17
ASSUMPTION 19:16
AT&T 4:8, 4:21,

4:23, 11:10, 18:6, 19:22, 20:20, 29:10, 32:24, 33:21
ATTACH 34:15
ATTACHED 26:7, 26:8
ATTEMPT 26:2, 30:1
ATTEMPTING 13:11
AUTHORITY 8:17, 13:25, 17:3, 26:1
AUTHORIZED 34:6
AWARE 7:2
AWAY 21:5, 38:7

< B >
BACK 15:23
BANKERS 5:23, 6:5, 6:22, 7:1, 12:23, 13:22, 14:9, 15:5, 15:15, 16:20, 30:8
BASED 8:9, 13:12, 13:18, 14:2, 34:4, 39:3, 41:15, 43:13
BASIS 30:18, 35:3
BEAR 12:15, 18:2, 25:13
BEGINNING 35:19
BEGINS 27:18
BELIEVE 6:12, 29:7, 40:25
BENEFIT 42:23
BETTER 38:21
BEYOND 21:15
BIT 38:6
BOARD 30:21, 33:12, 33:13
BOILERPLATE 18:4
BOSWELL 3:18, 14:6, 16:3,

30:7
BOULEVARD 2:25
BOUND 36:12,
36:13
BRAND 20:8,
20:11, 20:16,
20:24, 21:4,
34:22
BRANDED 20:10
BREACH 14:3
BREACHED 30:16
BREACHES 14:8,
30:12
BRIEF 12:18,
17:21, 23:3,
24:10, 30:3
BRIEFED 6:2
BRIEFING 8:12,
28:13, 31:2,
31:4, 40:14,
43:8, 44:24
BRIEFLY 28:15,
31:9, 35:6
BRIEFS 5:16,
43:2, 43:8,
43:10, 44:9
BRING 25:22
BURDEN 12:15
BUSINESS 18:11,
20:7, 20:17,
25:14, 35:16,
35:21, 39:25
BUSINESSES
35:17


< C >
C. 2:17
CA 1:41, 2:8,
2:15, 2:21,
2:27
CALIFORNIA 1:2,
1:28, 3:1,
46:5, 46:12
CALLED 27:5
CAMPAIGN 16:1
CAPITAL 27:15
CAREFULLY 9:8
CASE. 9:7
CASES 5:17,

5:24, 5:25,
6:2, 6:10,
6:19, 7:6,
8:13, 8:21,
8:22, 8:25,
9:14, 9:16,
9:17, 12:11,
12:16, 12:18,
12:19, 12:22,
13:7, 17:5,
17:10, 23:3,
23:5, 23:6,
23:18, 23:20,
24:16, 25:7,
30:6, 31:5,
31:6, 32:3,
41:17, 41:23,
43:4, 43:12,
43:17, 43:18,
44:5
CAUSE 23:24,
24:6, 24:7,
42:13
CAVEAT 39:10
CENTER 2:19
CENTRAL 1:2,
46:12
CERTAIN 4:24,
5:2, 7:12
CERTIFICATE
46:1
CERTIFY 46:14
CHAIR 4:25,
33:3, 33:13
CHAIRMAN 30:20
CHANGE 16:9
CHANGED 14:14
CIRCUIT 4:5,
5:19, 5:20,
5:22, 5:25,
6:1, 7:21,
7:23, 8:8, 9:4,
9:7, 16:18,
18:19, 19:22,
20:4, 31:4,
43:16
CIRCUITS 9:17
CIRCUMSTANCE
18:10
CIRCUMSTANCES

34:20
CITE 12:19,
12:21, 13:15,
17:3, 23:6,
26:1, 32:3
CITED 6:6,
6:13, 9:18,
13:8, 16:16,
24:15, 25:7,
43:17
CITES 5:24
CITING 14:5
CLAIM 15:5,
16:5, 16:7,
16:9, 19:24,
20:5, 29:10,
31:19, 31:24
CLAIMED 32:1,
32:9
CLAIMS 15:17,
15:20, 22:5,
31:19
CLASS 18:3,
18:20, 18:21
CLAUSE 5:6,
6:24, 24:21,
24:22, 25:2,
25:6, 27:21,
27:23
CLAUSES 8:5,
18:4, 18:21
CLEAR 8:24,
10:7, 11:14,
19:15, 21:25,
23:4, 23:12
CLEARLY 18:25,
22:24
CLIENT 11:21,
15:7, 30:6,
30:10, 30:14,
30:19, 30:20,
36:16, 39:25
CO-CONSPIRATOR
22:15, 29:1,
29:5, 29:11
CO-CONSPIRATORS
8:8
CO-COUNSEL
11:21
CO-DEFENDANTS

33:2
CODE 46:16
COLLABORATION
38:21, 39:13,
39:14
COLLABORATIVELY
38:20
COLLATERAL
4:17, 10:24,
11:18, 29:3,
29:24, 35:3,
36:6
COLLATERALLY
22:13
COMMENTS 12:13
COMMUNICATIONS
41:10, 41:11
COMPANIES 40:5,
40:7
COMPANY 3:18,
4:7, 40:6
COMPARABLE 4:9
COMPEL 9:25,
10:2, 12:2,
23:2, 25:19,
26:10, 38:17
COMPELLING
10:19
COMPLAINT 9:10,
14:1, 14:13,
14:22, 16:10,
16:24, 21:10,
28:24, 30:14,
30:15, 30:19,
32:15
COMPLETE 37:15
COMPLETELY
13:6, 20:16
COMPLICATED
42:10
COMPLY 17:16
CONCERNS 39:11
CONCLUDE 10:4,
17:10, 25:24,
42:22, 44:6
CONCLUDED 7:21
CONDUCT 13:12
CONDUCTING 5:11
CONDUCTS 39:25
CONFERENCE

3:21, 37:21,
41:20, 46:24
CONFERENCES
42:3
CONFORMANCE
46:22
CONNECTION
6:25, 7:5
CONSIDER 28:23
CONSISTENT
4:20, 7:19,
11:13, 13:6,
13:22, 14:10
CONSPIRACY 8:1,
14:24, 16:8,
36:16, 36:19
CONSTITUTE
29:13
CONSUMER 18:3,
18:20
CONSUMERS 18:4
CONSUMING 39:17
CONTAINED 8:5
CONTEND 22:1,
32:11
CONTENDING
21:21
CONTEXT 9:9,
18:16, 42:20
CONTINGENT
31:23
CONTOURS 16:9
CONTRACT 13:19,
18:6, 25:10,
27:5, 27:6,
27:18, 27:24,
28:1, 30:11,
30:12
CONTRACT.
13:13, 27:1
CONTRACTED 11:4
CONTRACTS
10:11, 21:2,
24:13, 25:14,
25:20, 26:20
CONTRACTUAL
32:23
CONTROL 20:15
CONTROLLED
30:22

CONTROLLING
8:15
CONTROLS 11:16
CONVENTION
39:15
CORE 3:22
CORRECT 14:17,
14:25, 24:4,
27:22, 28:8,
32:24, 32:25,
37:5, 46:16
COTTON 3:10,
3:14, 20:8,
20:9, 25:14,
25:17, 27:5,
28:3
COUNSEL 2:1,
29:21, 30:8,
30:10, 31:11,
33:21, 42:10
COUNT 34:24
COUNTY 46:3
COUPLE 17:24,
33:16
COURSE 22:21,
34:17
COURTROOM 22:10
COURTS 5:12,
8:16
CRACK 18:5
CREATIVE 16:17
CSR 1:38, 46:35
CURLEE 13:9
CURRENT 15:17,
15:20
CUSTOMER 16:3
CUTOFF 37:10
CV115-08048-JAK
1:11
CV15-08048 3:9


< D >
DAMAGE 20:2,
20:11, 20:12
DAMAGES 35:22,
36:8
DAN 3:17
DANIEL 2:23
DATE 37:8,

37:17, 37:19,
38:3, 42:21,
46:28
DATED 27:4
DATES 37:6,
39:5, 40:10,
40:11, 40:13,
40:16
DAUBERT 41:25
DAY 22:11
DAYS 38:2,
39:1, 44:6,
44:8
DEAD 18:22
DEALING 18:10
DECIDE 17:12
DECIDED 41:21,
41:25
DECISION 4:5,
5:11, 5:20,
5:21, 12:24
DECISIONS 5:9,
5:10
DECLARATION
26:9, 26:14,
31:15, 33:6,
33:8, 33:20,
34:3, 34:10,
34:14
DEFAULTED 21:2
DEFENDANT 3:14,
3:18, 4:15,
4:25, 5:4,
13:17, 18:8,
33:12, 33:13,
41:19
DEFENDANTS
1:15, 2:17,
4:15, 4:24,
8:6, 14:3,
14:19, 15:3,
15:11, 16:25,
22:16, 24:8,
28:25, 29:6,
29:23, 35:24,
40:19, 41:23
DEMANDING 23:1
DENIED 17:2,
41:25
DENY 38:17

DEPENDING 3:27
DEPOSITIONS
38:14
DEPRIVE 14:24
DESCRIBES 19:9
DESIGNED 41:14
DESTROYED 35:21
DESTROYS 20:17
DETAILED 9:11
DETERMINE 5:3
DETERMINED 4:14
DEVALUING 20:16
DEVASTATING
20:14
DIFFERENCE
4:22, 4:23
DIFFERENT 5:10,
5:14, 7:4,
9:17, 10:7,
10:13, 12:11,
18:9, 29:9,
30:17, 38:9,
41:1
DIFFICULTY
29:16
DIG 44:5
DIRECTIONS
12:11
DISCLOSED 41:12
DISCLOSURE
37:12
DISCOVERY
15:25, 37:10,
37:15, 38:12,
38:13, 38:22,
39:12
DISCUSS 5:16,
6:6, 11:21,
31:3
DISCUSSED
12:23, 42:5
DISMISS 3:26,
17:23
DISPARAGEMENT
16:1, 16:2,
24:5
DISPUTE 7:10,
7:16, 24:14,
24:24, 25:22
DISPUTE. 7:11

DISPUTES 10:18,
42:18
DISTINGUISH
28:9
DISTINGUISHED
7:23, 8:8, 9:7,
31:5
DISTINGUISHES
9:3
DISTINGUISHING
17:25
DISTRICT 1:1,
1:2, 1:4,
46:10, 46:12
DIVISION 1:2
DO. 25:25
DOCKET 26:13
DOCTRINE 5:3,
5:13, 6:20
DOCUMENT 26:14,
26:19, 26:21,
26:22, 27:4
DOCUMENTS
38:14, 39:20,
39:21
DOING 18:11
DOMINIC 2:3,
3:12
DONE 38:15,
38:24, 41:3,
41:16
DOWN 22:11,
27:17
DUE 44:9
DURING 30:21
DUTIES 14:4,
14:8, 16:23,
16:24, 30:12
DUTY 14:18,
14:21


< E >
E-MAIL 40:6
EARLY 37:24,
40:19, 41:13,
41:15
EARTH 23:8,
23:10, 23:11
EASIER 33:5

ECONOMIC 18:24,
18:25
ECONOMICS 15:9
ED 3:13, 17:19
EDWARD 2:17
EFFECT 4:17,
11:19, 29:4,
29:24
EFFECTIVE 41:17
EFFECTIVELY
18:22
EFFICIENT 8:11,
8:19, 9:19
EFFORT 19:2
EIGHTH 5:19,
5:20, 5:21,
7:21, 7:23,
8:8, 9:7, 31:4
EITHER 6:13,
10:1, 16:4,
23:6, 33:14,
38:10
ELDER 33:13
ELECTED 8:6
EMANUEL 2:4,
2:11
EMBARCADERO
2:19
END 45:2
ENE 41:3
ENGLISH 28:3,
39:21, 40:1,
40:6
ENORMOUSLY 16:3
ENOUGH 20:4
ENTERED 7:9,
7:13
ENTERPRISES
1:7, 3:10
ENTIRETY 28:2
ENTITLED 29:3
ENTITY 6:24,
11:3, 11:5
EQUITABLE 6:20,
13:7, 13:14,
13:20, 15:12
ERNIE 26:9
ESSENTIALLY
16:12
ESTABLISH

13:17, 25:5
ESTOPPED 22:13
ESTOPPEL 4:17,
5:9, 6:20,
10:24, 11:19,
13:7, 13:14,
13:20, 13:24,
15:12, 29:4,
29:24, 35:3,
36:7
ET 1:13
EVALUATE 39:3
EVALUATION
40:19, 41:14,
41:15
EVERYTHING 24:2
EVIDENCE 32:12,
33:17, 34:3,
34:9, 34:11,
34:15
EXACT 16:19,
23:25
EXACTLY 26:12,
30:13, 38:9
EXAMPLE 7:8,
39:22, 41:6
EXCEED 43:8
EXCLUSIVELY
16:4
EXCUSE 19:4
EXECUTIVE 13:9
EXHIBIT 26:7,
26:21, 36:23
EXHIBITS 26:23,
34:15
EXISTENCE
20:14, 20:23
EXPECT 39:18
EXPECTATION
38:16, 38:19
EXPERIENCE
41:22
EXPERT 37:12,
37:14, 37:15
EXPERTISE 25:17
EXPRESSED 24:5
EXTRA-LONG
20:9, 35:20

< F >
F.3D 4:6, 5:19,
5:23, 16:18
FACT 21:22,
25:15
FACTORS 17:25
FACTORY 35:20
FACTS 7:2,
17:24, 19:19,
23:18, 43:11
FACTUAL 4:22
FAILED 17:3
FAILS 32:8
FAILURE 14:7
FALSE 16:1
FAMILIAR 6:3,
6:4, 6:9, 6:15,
39:16
FASHION 38:23
FEDERAL 1:39,
5:12, 5:15,
5:25, 8:17,
46:8, 46:36
FEET 16:7
FEW 23:22
FIFTH 16:18
FIGUEROA 2:6,
2:13
FILE 31:14,
37:17, 43:1,
44:3
FILED 26:9
FINAL 37:21
FIND 8:22,
13:12, 26:12,
27:9, 43:13
FINDING 28:25
FINE 17:11,
23:11, 43:23
FINISH 38:25
FIRST 3:27,
11:7, 12:14,
12:18, 31:17,
40:15
FL 2:7
FLIMSY 20:19
FLOOR 2:14
FLOWING 11:9
FOCUS 31:3,
43:12

FOCUSED 17:6, 43:9
FOCUSING 10:14, 10:16, 16:14
FOLLOW-UP 29:20
FOLLOWING 38:11
FOOD 7:25, 8:1, 8:2, 8:3
FORCED 22:8
FOREGOING 46:16
FOREGONE 36:7
FOREIGN 39:14
FORM 29:13, 34:3
FORMAT 46:22
FORMS 5:10
FORWARD 19:23, 31:2, 32:14, 33:9
FOUND 22:15, 29:11, 32:6, 34:17, 34:25
FOURTH 5:22
FRANCISCO 2:21
FRONT 25:23
FUNDAMENTALLY 18:13

< G >
GAP 38:6
GARRETT 2:24
GENERATIONS 35:18
GEOGRAPHIC 7:13, 7:15
GETTING 16:2, 41:13
GIVE 6:20, 9:6, 9:15, 26:11, 43:1, 44:15
GIVEN 4:24, 39:2, 40:25, 43:10
GIVES 13:19
GOODS 10:18, 24:25
GOVERNED 28:1
GOVERNMENTS 39:14

GRANT 21:14
GRANTED 31:1
GRIGSON 16:17
GROW 20:9
GROWERS 20:8
GUIDED 30:22

< H >
HAGUE 39:15
HAND 16:21
HAPPEN 21:6
HAPPENED 39:3
HAPPY 30:3, 30:5
HARD 24:17
HARMED 19:23, 33:9
HEAR 4:12, 9:22, 17:12, 27:2, 31:5, 37:19, 41:9, 41:11
HEARD 35:11
HEART 20:13, 20:22, 23:25
HEDGES 2:5
HELD 25:9, 46:20
HELPFUL 9:5, 42:1
HEREBY 46:12
HISTORY 43:18
HOLD 16:22
HOLDING 11:14, 13:23, 20:3, 30:10, 34:19
HOLDS 11:8
HONORABLE 1:3
HUGE 41:16
HURT 19:23
HYPOTHETICALLY 22:2

< I >
ICA 24:15
IDENTIFIED 12:16
IDENTIFY 34:16

IDENTIFYING 31:18, 33:21
IGNORE 17:8
IMMEDIATE 16:13
IMPLICATIONS 19:12
IMPORTANT 5:17, 8:23, 12:24, 28:9, 31:12
IMPOSED 16:23, 16:24
IMPOSES 15:3
IMPRECISE 12:13
IMPROPERLY 14:14
INCISIVE 23:13
INCLUDE 5:18
INCLUDED 20:20
INCLUDING 4:25, 5:10, 5:25, 29:1
INDIA 35:17
INDICATE 17:15
INDISPENSABLE 3:24, 4:1, 4:3, 10:4, 10:5, 21:22, 28:22
INDIVIDUAL 8:5
INDUSTRY 25:17
INITIAL 31:23
INJURED 21:7
INJURY 21:20, 22:1, 22:4, 22:6, 28:23, 29:10, 29:13
INPUT 7:7
INSOFAR 38:12
INSTRUCTIVE 4:6
INSURANCE 6:25
INTEGRALLY 24:2
INTENDED 25:25
INTEREST 19:24, 20:5, 31:18, 31:20, 32:2, 32:9, 33:21, 34:16, 34:22, 34:23
INTEREST. 31:24
INTERESTS 22:16, 33:8

INTERNATIONAL 18:11, 25:13, 25:14, 25:16, 28:3, 38:13, 39:2, 39:12
INTERPRETATION 19:18
INTERTWINED 24:3
INVESTORS 6:23
INVOKED 24:23
INVOLVE 25:8
INVOLVED 6:23, 30:11, 38:13
INVOLVING 7:25, 32:4
ISSUE 3:24, 3:25, 4:2, 5:1, 5:9, 5:18, 6:1, 8:20, 9:25, 10:2, 10:4, 10:20, 10:23, 11:8, 17:13, 18:15, 30:4, 35:2, 35:5, 35:8, 36:1, 39:13, 44:22
ISSUES 3:22, 3:26, 10:3, 11:12, 18:18, 22:22, 25:1, 25:9, 36:22, 39:19, 39:24, 42:10
ITEM 3:9

< J >
J. 2:23
JAPANESE 40:5
JESS 1:13, 3:10, 3:14, 14:7, 17:20, 24:13, 25:20, 27:5, 31:11
JOHN 1:3
JOINDER 31:22
JOINT 34:18, 34:25
JOKO 1:38,

46:8, 46:33,
46:35
JOSEPH 2:10
JUDGE 1:4
JUDGMENT 29:4,
29:22, 36:5,
41:25
JUDICATA 29:23
JUDICIAL 46:24
JURISDICTION.
28:4
JURY 25:23


< K >
KINDS 41:23
KNOWING 15:24
KRONSTADT 1:3


< L >
LANGUAGE 25:6,
25:8, 39:21
LAST 11:14,
37:8, 37:17,
37:19
LAW 5:2, 5:7,
5:12, 5:14,
8:16, 15:13,
23:9, 28:3,
36:13
LAWS 5:14, 20:1
LAWYER 19:12,
22:10, 31:13
LEAST 23:9,
33:6
LED 16:12
LEGALLY-PROTECT
ED 31:24
LENGTH 37:24
LENGTHY 43:10
LETTERS 27:15
LEWKOWITZ 13:8
LIABILITIES
34:19
LIABILITY 4:14,
13:12, 13:17,
14:7
LIABLE 16:22
LICENSE 7:10,

7:12, 7:16,
14:9, 14:25,
15:3, 15:16,
15:18, 16:11,
16:24, 20:25,
21:17, 22:8,
23:23, 24:1,
24:3, 30:16,
30:23, 35:12,
35:22, 35:23
LICENSEE 7:9,
7:13, 7:17
LICENSING 7:20,
10:9, 10:15,
14:13
LICENSOR 7:8
LIGHT 9:16,
19:19
LIMITED 20:4,
24:14, 25:9
LIMITING 7:12,
25:8
LINE 12:25,
27:18
LINKS 11:5
LITIGATING
22:14
LITIGATION
11:9, 21:5,
33:9, 36:3,
36:4, 36:5
LITTLE 15:25,
38:6
LLC 1:13, 27:5
LLP 2:5, 2:12,
2:18, 2:24
LOGICAL 25:17
LONDON 25:16
LONG 24:17,
43:21
LOOK 9:18,
13:10, 23:5,
24:12, 26:3,
31:2, 43:14,
43:18
LOOKED 5:12,
7:5, 8:17, 8:21
LOOKING 18:19,
23:13, 26:22,
27:13

LOS 1:28, 1:41,
2:8, 2:15,
2:27, 3:1,
25:23, 46:3
LOSE 12:15,
12:19, 13:4,
42:23
LOT 42:17
LTD 1:7
LYNCH 43:16


< M >
MALICIOUS 41:7
MANAGED 13:4
MARGINAL 39:24
MARKET 30:1
MARKETED 20:10
MATERIAL 44:7
MATERIALS 20:25
MATTER 4:21,
11:22, 18:14,
24:1, 33:15,
42:22, 46:20
MEAN 19:8,
22:18, 26:4,
28:19, 32:1,
38:2, 41:6,
42:15
MEANINGFULLY
41:24
MEANT 12:13
MEMBER 32:19,
33:12, 33:13
MEMBERS 21:4
MENTIONED 43:12
MERCHANDISE
7:25, 8:1
MERRIL 43:16
MIDWAY 27:17
MILLION 35:19
MIND 18:3,
25:13, 37:6,
43:8
MINDFUL 38:11
MINUTE 3:19,
21:8, 26:5,
29:15
MISSING 34:13
MOMENTS 23:22

MONDAY 1:30,
3:1, 44:4,
44:10
MONETARY 21:11,
21:15, 22:3
MONEY 35:22,
42:12, 42:17
MONTH-LONG 38:1
MORNING 3:11,
3:13, 3:15,
3:17, 3:19
MOTION 3:24,
3:26, 9:24,
10:1, 12:1,
17:2, 17:22,
23:2, 25:19,
26:10, 28:21,
30:25, 31:11,
32:8, 38:17
MOTIONS 3:20,
3:22, 3:23,
37:17, 41:21,
41:25, 44:23
MOVE 35:4
MUSIC 2:24


< N >
NAMED 4:8
NARROW 34:20
NATIVE-AMERICAN
32:4
NATURE 19:9,
36:15, 36:19,
39:2
NECESSARILY
42:16
NECESSARY 3:28,
10:22, 11:15,
31:10, 32:7
NEED 9:6, 9:13,
9:14, 23:17,
43:9, 43:21,
44:6, 44:17
NEEDS 7:5
NEUFELD 33:12
NEUTRAL 40:18,
40:19, 41:13,
41:15, 42:5,
42:12, 42:20,

42:24
NEW 7:17,
12:22, 35:10
NEXT 40:14,
44:3, 44:4,
44:10, 44:11,
44:13, 44:14,
44:15
NINTH 4:5,
18:19, 19:21,
20:4
NO. 1:38, 3:9,
15:22, 19:7,
32:13, 36:10,
42:13, 46:35
NOBODY 36:17
NON 11:1
NON-EXPERT
37:10, 38:12
NON-PARTIES
40:4
NON-PARTY 36:2,
36:6
NON-SIGNATORE
16:22
NON-SIGNATORY
5:3, 13:18,
14:2
NONE 4:20
NOTE 6:23
NOTEBOOK 26:12
NOTED 22:21
NOTION 24:5
NOTWITHSTANDING
11:2

< O >
OBLIGATION
11:1, 14:18,
14:21, 15:2,
15:5
OBLIGATIONS
13:18, 14:4,
14:8, 30:12
OBSERVATION
18:18
OFFER 41:24
OFFICIAL 1:39,
46:1, 46:8,

46:36
OFTEN 9:18
OKAY 19:10,
19:20, 27:11,
28:11, 29:15,
29:18, 35:9,
41:3, 43:7
OLIVER 2:5
ONE 2:25, 4:25,
10:21, 12:22,
14:12, 16:21,
22:7, 24:19,
26:23, 28:20,
28:22, 30:5,
33:2
ONE-SENTENCE
10:17
ONE. 10:1, 12:5
ONES 43:15
OPERATES 20:15
OPPORTUNITY
14:15, 36:8
OPPOSED 19:17,
33:18, 34:3
OPPOSITION
12:20, 13:7,
13:16, 14:10,
14:11, 25:19,
31:17, 35:15
OPTION 27:19
ORDER 8:20,
21:17, 30:13,
42:11
ORGANIZATION
14:22, 20:8
ORGANIZED 16:1
ORIGINAL 7:16,
7:20, 27:18
OTHERS 11:4,
28:25, 29:25,
43:13
OUTCOME 3:27
OUTSET 32:8
OUTSIDE 40:18
OWN 30:8

< P >
PAGE 46:22
PAGES 43:9

PARAGRAPH
24:18, 28:24
PART 7:20,
10:9, 14:22,
14:23, 16:23,
38:8
PARTICULAR
24:25
PARTICULARIZED
30:17
PARTIES 25:15,
32:7, 34:19,
37:8, 40:3,
41:15, 44:10
PARTS 7:12
PARTY 3:24,
4:1, 4:3, 6:13,
7:14, 7:17,
10:4, 10:5,
10:23, 11:3,
11:10, 11:12,
11:15, 21:22,
28:22, 31:10,
31:19, 31:24,
32:19, 36:4
PAST 33:14
PAUL 2:10, 3:15
PAUSE 29:17
PEELER 2:24
PENDING 30:25
PEOPLE 42:3,
42:11
PERFECTLY
12:17, 14:10,
25:17
PERFORMANCE
13:19
PERIOD 27:19
PERMISSIVE
34:19
PERMIT 14:14
PERSUADE 38:1
PERSUADED
10:16, 38:24
PERSUADING 38:1
PHRASES 24:19
PIECE 21:5
PLAIN 25:5
PLAINTIFF 1:9,
2:3, 3:12,

3:16, 4:11,
4:12, 4:16,
5:5, 10:11,
10:12, 11:1,
11:3, 16:21,
18:5, 18:11,
22:5, 23:14,
24:23, 25:8,
26:3, 29:22,
39:20
PLAINTIFF/LICEN
SOR 7:18
PLAINTIFFS 8:4,
8:6, 12:15,
17:2, 22:2,
36:7
PLEADING 18:7
PLEADINGS 37:9
PLEASE 17:20,
29:19
PLEASURE 12:17
POINT 10:17,
17:1, 17:24,
18:2, 20:25,
28:20, 30:5,
33:18, 33:19,
34:25
POINTED 28:10
POINTS 10:21
POLICIES 6:25
PORTUGUESE 40:6
POSITION 4:12,
4:15, 4:16,
21:11
POSITIONS 7:4,
43:11
POSSIBLE 4:17,
28:23
POSSIBLY 29:22
POTENTIAL 29:10
POTENTIALLY
42:18
PRACTICAL
18:18, 19:12
PRAYER 21:10,
28:24
PRECISELY 23:22
PRECLUDED 11:12
PRECLUSION
11:9, 35:2

PREFERENCE 39:9
PRELIMINARY
11:22
PREPARED 4:19,
6:6, 11:17,
11:18
PRESENT 33:14,
34:20
PRESENTED 3:23,
5:9, 33:17
PRESIDENT 13:9,
13:10
PRESIDING 1:4
PRESUME 29:1
PRETRIAL 37:21
PRETTY 11:14,
39:24
PREVAILS 22:5
PREVENTED 16:2
PRINCIPALLY
16:4
PRINCIPLE 16:19
PRIVATE 42:5,
42:12
PRIVILEGED
41:10
PRIVITY 22:16
PRM 5:18, 6:8,
6:15, 7:8, 8:9,
9:3, 23:15
PROBABLY 35:1
PROCEDURAL
14:24
PROCEED 8:12,
8:19
PROCEEDING 4:13
PROCEEDINGS
1:26, 29:17,
45:2, 46:18
PROCESS 28:7,
28:10, 41:14,
44:16
PROCESSES 38:22
PRODUCT 21:1
PRODUCTION
38:14
PRODUCTIVE
41:20, 42:2,
42:14
PRODUCTS 8:2

PROMISSORY 6:23
PROMOTION 20:7
PROPOSED 41:6,
41:19
PROPOSING
40:18, 40:19,
40:23
PROPOSITION
32:12, 34:2
PROSECUTION
41:8
PROTECT 20:24,
21:3, 21:4,
22:20
PROTECTED 32:9
PROTECTIONS
14:25
PROVE 16:12
PROVIDE 41:14
PROVIDED 8:2,
44:10
PROVIDER 4:8
PROVIDERS 8:3
PROVISION 10:6,
24:13, 24:14
PROVISIONS 18:6
PULLED 13:1
PURCHASE 24:25
PURCHASED 10:18
PURCHASERS 7:25
PURSUANT 16:22,
46:14
PURSUE 15:9
PUT 33:6, 33:8
PUTS 18:16
PVT 1:7


< Q >
QUESTION 23:21,
28:22, 29:21,
33:10, 33:15,
34:13
QUESTIONS
33:16, 35:5
QUINN 2:4, 2:11
QUITE 4:9,
9:10, 18:9,
24:4, 27:2
QUOTE 15:4,

31:22
QUOTING 13:25


< R >
RAISED 36:1
RAISES 3:26
RANCH 5:11
RATIONALE 4:21
REACH 3:28
READ 8:9, 8:25,
9:14, 15:4,
24:17, 25:18,
31:6, 32:15,
32:20, 43:15
READING 13:23
REAL 39:11
REALLY 9:8,
12:25, 13:22,
20:3, 23:25,
25:18, 26:4,
39:24
REASON 20:13,
20:22, 22:23,
36:9, 36:11
REASONABLE
38:23
REASONS 32:16
REBUTTAL 37:14
RECEIVE 44:24
RECOGNIZE 8:25,
9:1, 9:2, 38:16
RECORD 26:6
REFER 43:15
REFERRED 7:6,
17:11
REFERRING 27:22
REGULATIONS
28:2, 46:24
REGULATORY
19:25
REINSTATE 21:17
RELATED 13:15
RELATIONSHIP
32:23, 33:1
RELEVANT 23:7,
30:21
RELIEF 21:10,
21:11, 21:12,
21:14, 21:15,

22:3
REMARKS 27:12,
27:15
REMEDIES 41:24
REMEDY 35:13
RENEW 22:8
RENEWAL 35:13
REPLY 6:6,
12:21, 16:17,
32:3
REPORT 36:24,
37:7, 38:20,
40:17, 43:1
REPORTED 46:18
REPORTER 1:39,
46:1, 46:10,
46:36
REPORTER'S 1:26
REPRESENT 32:14
REPRESENTATIVE
30:20
REPRESENTED
11:13, 36:14
REPRESENTED.
22:17
REPUTATION.
35:2
REPUTATIONAL
20:2, 20:12,
34:23
REQUESTED 28:13
REQUIRE 5:5,
7:18, 34:14
REQUIRED 7:21,
33:17
REQUIREMENT
31:23
REQUIRES 30:11,
31:18, 32:1
RES 29:23
RESOLVING 42:18
RESOURCES 15:8
RESPECT 4:1,
5:1, 8:13,
9:11, 12:1,
14:19, 17:22,
21:20, 22:22,
23:2, 31:10,
36:8, 38:12,
39:25, 43:7,

44:22
RESPECTIVE
8:13, 9:15,
43:11, 43:19
RESULT 22:4,
22:7
RETAILER 8:4
RETAILERS 7:25
REVIEWED 37:7
REVOCATION 24:3
RISE 13:19
RISK 22:20
RISKS 20:16
RISKY 31:12
RIVES 2:18
ROAD 22:11
ROLE 4:24,
9:11, 9:12
ROOM 1:40
RULE 3:23,
10:21, 21:22
RULES 28:2
RULING 44:22
RULINGS 37:20

< S >
S. 2:6
SALE 24:25
SALES 26:20,
26:25, 27:5,
27:6, 27:18
SAN 2:21
SAYING 8:1,
20:21
SAYS 16:24,
20:4, 24:14,
26:25, 27:12,
27:14, 27:25,
28:1, 32:21,
34:24
SCHEDULE 17:15,
40:14
SCHEDULING
3:21, 36:22
SCHROEDER 26:9
SCOPE 7:10,
7:13, 7:16,
25:4, 25:5,
28:6, 28:9

SCORCH 23:8
SCRUTINY 19:25
SECOND 5:25,
10:25, 25:4,
26:11, 33:11,
43:15
SECTION 16:5,
16:6, 24:6,
29:2, 29:6,
46:14
SEEING 26:17
SEEK 5:4,
16:22, 35:13,
35:14, 35:15,
35:23
SEEKING 21:11,
22:3, 35:21,
35:22
SELECT. 27:19
SELLER 27:19
SELLING 21:1
SELLS 10:12
SEND 44:7
SENSE 15:10
SENSIBLE 42:21
SEPARATE 24:20
SERIES 3:20,
9:17
SERIOUS 37:25
SERVES 16:4
SERVING 4:25
SET 40:13
SETTLEMENT
40:16, 41:7,
41:20, 44:16
SEVERAL 34:18,
35:15
SHERMAN 24:7,
29:2
SHOW 30:24,
42:3
SHOWED 12:20,
38:20
SHOWING 31:25
SHOWS 30:9
SIC 12:15, 17:2
SIDE 23:6
SIDES 42:2
SIGNATORIES
13:11

SIGNATORY 5:4,
5:5, 11:2, 14:1
SIGNED 18:4
SIGNIFICANT
5:24, 8:14,
10:3
SIGNIFICANTLY
21:6
SIMPLY 22:10,
26:2, 34:16,
35:23
SITUATION 30:7
SIZE 40:25
SLATTERY 2:10,
3:15, 3:16
SMALL 24:18
SMITH 1:13,
3:10, 3:14,
14:7, 17:20,
24:13, 25:20,
27:5, 31:11
SOLD 6:23,
6:24, 6:25,
10:19
SONS 1:13,
3:10, 3:14,
27:5
SOPHISTICATED
18:11, 42:10
SORRY 28:17
SORT 18:18,
20:1, 20:18,
24:5, 43:17
SORTS 21:2
SOUGHT 7:18,
19:1
SOUTH 2:13
SOVEREIGNS
32:4, 32:5
SPEAKING 19:11
SPECIFIC 31:18
SPEND 42:12
SPENT 35:19,
42:17
SPINNER 35:17,
36:3
ST 2:6
STAND 22:10,
43:2
STANDARDS 6:21

STANDS 32:11,
34:2
STAPLE 20:9,
35:20
STARK 41:1
START 35:20
STARTING 18:2
STATE 12:5,
12:8, 46:5
STATED 8:16,
10:23, 12:9,
42:9
STATEMENT
10:13, 10:17
STATES 1:1,
1:4, 5:14,
16:20, 46:10,
46:16, 46:26
STAY 30:25
STEERED 30:22
STENOGRAPHICALL
Y 46:18
STEP 31:17
STIPULATE
11:18, 11:23,
22:2, 22:11,
36:11
STIPULATING
29:22
STIPULATION
22:19, 44:7
STOEL 2:18
STREET 1:40,
2:13
STRIP 30:22
STRUCTURE 34:4
STUFF 34:16
SUBJECT 4:10,
10:23, 19:24
SUBMISSION
44:24
SUBMIT 32:12,
34:3, 44:7,
44:9, 44:11
SUBSTANCE
13:25, 41:11
SUE 8:6, 41:7
SUED 7:17, 8:7,
11:3, 11:4,
13:8

SUFFER 20:1
SUITE 2:20,
2:26
SULLIVAN 2:12
SUMMARY 41:24
SUMMER 38:8
SUN 5:10
SUNKIST 14:5,
15:14
SUPERSEDES
23:15
SUPPLEMENTAL
8:12, 28:12,
43:1, 44:24
SUPPLIERS 10:11
SUPPORT 26:10
SUPPORTED
15:13, 15:14
SUPPORTS 17:3
SUPPOSE 22:2
SURPRENANT 2:3
SWIM 12:2

< T >
T-MOBILE 11:10
T. 1:38, 46:8,
46:33, 46:35
TARGETED 36:16
TECHNICAL 29:16
TELEPHONE 4:7
TENSE 33:14
TENTATIVE 4:3,
9:20, 10:22,
12:3, 12:9,
12:12
TENTATIVE. 12:4
TERMINATED
15:17, 15:19,
16:11, 20:24,
23:24
TERMINATION
14:15, 24:2
TERMS 18:14,
31:4, 37:24
TERRIBLY 39:16
TEXT 27:15
THIN 20:18
THINKING 9:21,
16:7, 34:15

THINKS 23:6
THIRD 18:5,
40:2
THIS. 26:4
THOUGH 28:21
THREATENING
31:12
THREE 2:19,
12:22, 19:1,
35:18
TIMETABLE 37:3
TITLE 46:14
TODAY 22:10,
44:17
TOGETHER 43:4
TOO. 36:18
TOOK 39:1
TORTFEASOR
34:25
TORTFEASORS
34:18
TRACK 23:23
TRADE 18:12,
21:3
TRADELINE 1:7,
3:9, 14:2,
16:21, 19:1,
20:24, 22:8,
22:11, 22:25,
25:12, 25:19,
30:23, 35:17,
39:6
TRANSCRIPT
1:26, 46:18,
46:22
TRANSLATION
39:19, 39:24
TRIAL 37:23,
37:24, 38:1,
38:3
TRIBAL 32:4
TRIBUNAL 25:16
TRUE 46:16
TRY 38:22
TRYING 13:17,
18:5
TURN 36:21
TWO 3:28, 9:16,
10:3, 10:7,
10:13, 22:22,

25:1, 31:5,
32:3, 35:16,
43:12, 43:22

< U >
UMBRELLA 36:18
UNDERLYING
14:1, 30:11
UNDERSTAND
8:25, 11:24,
14:20, 17:4,
19:14, 21:9,
21:19, 21:24,
33:25, 34:8,
35:8, 39:16,
40:8
UNDERSTANDING
4:10, 19:12,
21:25
UNDERWRITE 7:1
UNILATERALLY
14:14
UNIQUE 30:7
UNITED 1:1,
1:4, 46:10,
46:14, 46:24
UNLESS 35:4
UNLIKE 18:24
UNLIMITED 25:6
UNMINDFUL 39:4
UNTIL 41:21,
41:24
UNWILLING 41:24
UPDATE 44:16
UPSTREAM 12:2
URQUHART 2:4,
2:11
USING 20:15

< V >
V. 3:10, 11:7
VALID 25:5
VALLEY 5:11
VALUABLE 16:3,
41:2
VALUE 21:4
VALUED 25:2
VARIOUS 6:20

VERDICT 22:12,
22:15
VERSUS 4:6,
11:14, 11:16,
16:17, 31:16
VIABLE 15:17,
15:21
VICE 13:9
VIEW 4:3,
10:22, 12:9,
35:25, 40:9,
42:9
VIEWS 8:13,
9:15, 17:12,
41:1, 43:19
VIOLATED 29:6
VIOLATES 29:2
VIOLATION 30:23
VS 1:11

< W >
W. 1:40
WAIVERS 18:21
WALK 22:12
WANTED 12:10,
19:15
WARD 4:6, 11:7,
11:14, 11:16,
17:23, 17:25,
18:3, 18:19,
19:3, 20:3,
31:16, 32:20,
32:22, 34:23
WAYS 30:17
WEDNESDAY 44:4,
44:11, 44:13,
44:14, 44:15
WEEK 43:22,
43:23, 43:25,
44:1
WEEKS 39:2,
43:22
WELCOME 22:18
WEST 23:9
WESTERN 1:2
WHATSOEVER
31:25
WHETHER 4:2,
4:13, 4:16,

```
5:3, 5:4,              42:16
21:16, 29:3,           YEARS 19:2
33:14, 34:1,
38:14, 40:7,
42:21, 44:8
WHOLE 23:9,
23:11
WHOLESALE 5:21,
6:11, 6:17,
7:24, 9:1,
23:15
WHOM 8:6,
10:12, 11:4,
42:5
WILL 12:17,
17:15, 22:3,
23:8, 28:12,
30:24, 31:8,
35:14, 35:22,
39:18, 41:1,
43:14
WILLING 11:22,
21:14, 24:12
WILSHIRE 2:25
WITHIN 7:15
WITHOUT 14:15
WOODS 2:23,
3:17, 3:18,
28:15, 28:18,
28:20, 29:12,
29:20, 31:8,
34:24, 37:2,
40:9, 40:11,
40:21, 41:6,
44:20
WORDS 17:9,
19:9, 21:21,
36:17
WORK 38:19,
38:22, 41:16,
43:25
WORKED 43:4
WORKS 44:1
WORLD 20:10
WORTH 15:8
WRITTEN 44:22


< Y >
YEAR 11:15,
```