EDWARD C. DUCKERS (SB #242113)
ed.duckers@stoel.com
MICHAEL B. BROWN (SB #179222)
micahel.brown@stoel.com
JONATHAN A. MILES (SB #268034)
jonathan.miles@stoel.com
STOEL RIVES LLP
Three Embarcadero Center, Suite 1120
San Francisco, CA 94111
Telephone: (415) 617-8900
Facsimile: (415) 617-8907
DAN WOODS (SB #78638)
d.woods@musickpeeler.com
ADAM M. WEG (SB #269320)
a.weg@musickpeeler.com
MUSICK, PEELER & GARRETT LLP
624 South Grand Avenue, Suite 2000
Los Angeles, CA 90017-3383
Telephone: (213) 629-7600
Facsimile: (213) 624-1376
Attorneys for Defendants
JESS SMITH & SONS COTTON, LLC and
J.G. BOSWELL COMPANY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

TRADELINE ENTERPRISES PVT., LTD,

Plaintiff,

v.

JESS SMITH & SONS COTTON, LLC; and J.G. BOSWELL COMPANY,

Defendants.

Case No. 2:15-cv-08048-JAK (RAOx)

**DEFENDANTS JESS SMITH & SONS COTTON, LLC'S AND J. G. BOSWELL COMPANY'S JOINT OPPOSITION TO MOTION TO WITHDRAW AS PLAINTIFF'S COUNSEL**

Hearing:
Date: September 30, 2019
Time: 9:30 a.m.
Dept: 10B
Judge: John A. Kronstadt

# TABLE OF CONTENTS


Page(s)

I. INTRODUCTION ........ 1

II. BACKGROUND ........ 1

III. JESS SMITH AND BOSWELL WILL BE PREJUDICED IF THE COURT GRANTS THE MOTION ........ 6

IV. THERE IS NOT GOOD CAUSE TO GRANT THE MOTION ........ 8

A. There Is No Conflict Between Tradeline And The Funder ........ 8

B. Counsel For Tradeline's Recent Inability To Collect Fees And Expenses Does Not Constitute Good Cause To Withdraw ........ 10

C. Termination Under The Retention Agreement Does Not Constitute Good Cause To Withdraw ........ 12

D. Tradeline's Consent To The Withdrawal Does Not Constitute Good Cause ... 12

V. CONCLUSION ........ 13

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Arch Ins. Co. v. Allegiant Prof. Bus. Servs.*,
No. CV 11-1675 CAS, 2012 WL 1745585 (C.D. Cal. May 16, 2012) ....12

*Lempert v. Superior Court (Campbell)*,
112 Cal.App.4th 1161 (2003) ....11, 12

*Pension Plan v. Yubacon Inc.*,
No. C-12-0473 DMR, 2014 WL 1101659 (N.D. Cal. Mar. 18, 2014) ....12

## Other Authorities

*Cal. Prof. Conduct, Rule* 1.16(b)(5) ....10

*Cal. Rules of Court, Rule* 3.1362(d)(2) ....8

## I. INTRODUCTION

Quinn Emanuel attempts to portray its motion to withdraw as counsel for Tradeline as a brief, easy routine motion. But it is far from that.

Defendants Jess Smith & Sons Cotton LLC ("Jess Smith") and J.G. Boswell Company ("Boswell") compelled Tradeline's underlying antitrust claims in this action to arbitration, and then obtained a complete defense verdict once there. The arbitration tribunal ordered Tradeline to pay almost $9 million in fees and costs, including almost $6 million to Defendants. Tradeline has not paid a single cent of that award.

Because Tradeline failed to satisfy the judgment, Defendants brought a motion to add the litigation funder who funded Tradeline's meritless action to the judgment based on the argument that (1) Tradeline and its counsel had committed fraud on the Tribunal during the arbitration, and (2) the litigation funder controlled the litigation. In response, the Court authorized Defendants to engage in post-judgment discovery to determine, at the very least, the identity of Tradeline's funder. Defendants served that discovery on Quinn Emanuel as Tradeline's counsel, and Quinn Emanuel responded with objections only which have completely prevented Defendants from determining the funder's identity.

This motion appears to be a further effort by Tradeline and its funder to avoid having to produce Tradeline documents in Quinn Emanuel's possession, custody, and control in post-judgment discovery authorized by this Court regarding the litigation funding of Tradeline's baseless antitrust conspiracy case. As shown below, none of Quinn Emanuel's four stated reasons for withdrawal constitute required good cause. In short, this motion is just the latest effort to frustrate Defendants' efforts to enforce their judgment. It should be denied.

## II. BACKGROUND

Quinn Emanuel's motion does not discuss the significant factual and procedural background since this Court entered judgment against Tradeline and in

favor of Jess Smith and Boswell. The Court should consider this extensive background when ruling on Quinn Emanuel's instant motion.

During the underlying international arbitration, after Tradeline stated that it had no assets, Jess Smith and Boswell, believing that Tradeline's antitrust conspiracy claim lacked any possible shred of merit, applied for an order requiring Tradeline to post security for their costs. On November 10, 2017, in response to Jess Smith's and Boswell's application, Tradeline's counsel represented that "pursuant to the funding agreement between Tradeline and its funder, the funder is obliged to reimburse Tradeline for any award of reasonable costs that Tradeline is obliged to pay in these proceedings." The tribunal denied the motion for security based on this material representation. Woods Decl., ¶¶ 2-3.

On April 10, 2018, the tribunal issued a unanimous final award in favor of Jess Smith and Boswell, finding that Tradeline failed to establish its antitrust claims against them. The tribunal also awarded them attorneys' fees and costs, finding: "Tradeline's advisors and funders must also have appreciated the tenuous nature of the asserted claims" and "anything other than an order for Tradeline to bear the unwarranted costs it imposed on Respondents would be tantamount to an invitation to bring high value, potentially meritless claims, in the hope of achieving an *in terrorem* settlement." As a result, the tribunal awarded Jess Smith and Boswell $3,525,000 and $2,219,000, respectively, plus compound interest on those amounts at the rate of 6% every six months. On August 2, 2018, over Tradeline's objection, the Court confirmed the arbitration award and entered judgment in favor of Jess Smith and Boswell in the amounts ordered by the tribunal. Dkt. 87; Woods Decl., ¶¶ 4-5 .

To attempt to enforce this Court's judgment, on December 19, 2018, Jess Smith and Boswell jointly filed a motion to amend the judgment to add Arrowhead Capital, whom they understood to be Tradeline's litigation funder. as a judgment debtor. Dkt. 96. Tradeline filed an opposition on February 7, 2019. The opposition

papers included a declaration from Mark Jacobs, who declared that Arrowhead Capital did not have any connection to the litigation but his declaration and the opposition did not identify the funder. Dkt. 102. Tradeline also argued that the Court should defer ruling on the motion to amend the judgment until the conclusion of its appeal of the judgment. Dkt. 102 at p 5, 12; Woods Decl., ¶ 6. Jess Smith and Boswell filed a joint reply on February 21, 2019. Dkt. 102.

This Court heard oral argument on the motion on April 1, 2019. During the hearing, counsel for Tradeline stated that Quinn Emanuel represented "the funder and the plaintiff for purposes of this motion." April 1, 2019 Transcript, 5:14-24. In response, counsel for Jess Smith stated that it was difficult to understand "how Tradeline has any interest in opposing this motion." *Id.* at 14:15-21; Woods Decl., ¶ 7.

On April 2, 2019, the Court ordered the parties to file a joint report regarding any informal procedures that could streamline the issues presented by the motion, including post-judgment discovery. Specifically, the Court ordered the parties to state, among other things, "whether the identity of the person(s) or entit(ies) that funded Plaintiff's litigation of this matter will be disclosed... ." Dkt. 106; Woods Decl., ¶ 8.

On April 3, 2019, counsel for Tradeline sent an email to counsel for Jess Smith stating that Tradeline's funder was willing to provide the two funding agreements with Tradeline, with the financial terms of the agreements redacted, on condition that the parties executed a non-disclosure agreement. Woods Decl., ¶ 9. Counsel for Jess Smith responded via email later on April 3, 2019, inviting the funder's draft of the proposed non-disclosure agreement and the production of the two funding agreements. Woods Decl., ¶ 10.

Counsel proceeded with a meet-and-confer conference call the following day. After some disagreement, the parties filed their joint report on April 8 informing the Court of the developments. Dkt. 110; Woods Decl., ¶¶ 11-13.

On April 15, 2019, the Court issued a minute order on the joint motion to amend the judgment, deferring to add Tradeline's funder to the judgment and granting the request for post-judgment discovery. Dkt. 111. The Court's order specifically authorized Jess Smith and Boswell to conduct post-judgment discovery. Dkt. 111 at 5-6. In doing so, the Court reasoned that "[w]ithout more detailed information presented in the context of a request to add a specific funder, a determination cannot be made regarding whether the circumstances present in this action justify amended the judgment." Dkt. 111 at 6. The Court then held that Jess Smith and Boswell could renew their motion "if appropriate, on the basis of relevant information obtained through appropriate discovery." Dkt. 111 at 6.

On April 23, 2019, counsel for Tradeline forwarded a draft non-disclosure agreement to facilitate the production of Tradeline's funding agreements. The draft agreement did not comport with this Magistrate Judge Oliver's model protective order and was the type of non-disclosure agreement typically used in corporate transactions. Woods Decl., ¶ 14. On April 25, 2019, Jess Smith and Boswell jointly served 11 post-judgment requests for production of documents to Tradeline. Woods Decl., ¶ 15.

On April 30, 2019, counsel for Jess Smith and Boswell provided their joint comments to the draft non-disclosure agreement, recommending incorporating the applicable provisions from Magistrate Judge Oliver's model protective order, which the Court's standing order directs the parties to use. Jess Smith and Boswell also provided a comparison between their suggested changes to the draft non-disclosure agreement and the applicable provisions from Magistrate Judge Oliver's model protective order. Woods Decl., ¶ 16.

On May 15, 2019, counsel for Jess Smith and Boswell followed up on their comments to the draft non-disclosure agreement. Counsel for Tradeline responded the same day, stating that the funder no longer intended to voluntarily produce the

funding agreements, ostensibly because Jess Smith and Boswell had served formal document requests. Woods Decl., ¶ 17.

Tradeline then served objection-only responses to the requests for production on May 31, 2019. Counsel for Jess Smith and Boswell sent a meet-and-confer letter to counsel for Tradeline on June 7, explaining why each of the objections were improper and demanding that Tradeline provide substantive responses and responsive documents. Counsel for the parties held a telephonic meet-and-confer on June 17 to discuss these issues further. Woods Decl., ¶¶ 18-19.

On July 2, 2019, the Ninth Circuit unanimously affirmed the judgment entered by this Court. Dkt. 112. The Ninth Circuit's affirmance came less than a month following the oral argument and required only a two-page Memorandum Opinion. Woods Decl., ¶ 20. In other words, the Ninth Circuit gave short shrift to Tradeline's appellate arguments.

Tradeline served amended objections and responses to the requests for production on July 8 and a privilege log on July 11. The amended responses included a substantive response to only 1 out of the 11 requests, stating Tradeline did not have any responsive documents, and maintained objection-only responses to the other 10 requests, including the request asking for the funding agreements. Woods Decl., ¶ 21.

The parties executed and Magistrate Judge Oliver entered a stipulated protective order on July 15. Dkt. 114; Woods Decl., ¶ 22.

On July 25, counsel for Jess Smith and Boswell sent a joint follow up meet-and-confer letter to counsel for Tradeline. Woods Decl., ¶ 23.

Because Tradeline had not produced any documents and had maintained that it would not do so, the parties were at an impasse. On August 5, counsel for the parties scheduled an informal discovery conference with Magistrate Judge Oliver for August 23. Woods Decl., ¶ 24.

On August 12, counsel for Tradeline wrote an email stating that his firm no longer represented Tradeline's litigation funder in these post-judgment proceedings. This was the first time Quinn Emanuel had so notified counsel for Jess Smith and Boswell of this position. Woods Decl., ¶ 25.

On August 21, two days before the informal discovery with Magistrate Judge Oliver, counsel for Tradeline wrote an email stating that his firm's "representation of Tradeline is also not ongoing" pursuant to the terms of their retention agreement. This was the first time Quinn Emanuel had informed Jess Smith and Boswell of this development. Immediately after receiving that email, counsel for Boswell wrote a response explaining that counsel for Tradeline remains as the attorneys of record unless and until Tradeline substitutes new counsel or this Court approves a withdrawal. Woods Decl., ¶¶ 26-27.

Counsel for the parties proceeded with the informal discovery conference on August 23. At the outset, Magistrate Judge Oliver explained that she was inclined to continue the conference to allow counsel for Tradeline to file a motion to withdraw. Counsel for Jess Smith and Boswell responded that the threatened motion to withdraw was just the latest attempt by Tradeline, with the assistance of its counsel, to prevent enforcement of this Court's judgment and the post-judgment discovery already authorized by this Court. Woods Decl., ¶¶ 28-31. Ultimately, Magistrate Judge Oliver continued the conference until after Quinn Emanuel filed and the Court addressed this withdrawal motion by Tradeline's counsel. Dkt. 117.

As of the date of this opposition, the amount of the judgment with interest now amounts to approximately $3,739,672 owed to Jess Smith and $2,354,137 owed to Boswell. Dkt. 77 at 4-5; Woods Decl., ¶ 4.

## III. JESS SMITH AND BOSWELL WILL BE PREJUDICED IF THE COURT GRANTS THE MOTION

As Jess Smith and Boswell showed in their motion to amend the judgment, this Court has the power and authority to amend its judgment to add judgment

debtors if a non-party controlled the underlying litigation or committed a fraud on the Court to limit the number of debtors named in the judgment. Dkt. 96-1 at 16:20-23 citing *In re Levander* 180 F.3d 1114, 1120-21 (9th Cir. 1999).

The motion represents only the latest fraud on the Court dating back to counsel for Tradeline's representation to the tribunal during the international arbitration proceedings. The conduct of Tradeline, aided by its counsel, along with its funder has been strategically designed to obfuscate the identity of the funder and the facts regarding the funder's role in this case, all to prevent Jess Smith and Boswell from adding the funder as a responsible judgment debtor. Since this Court entered judgment in favor of Jess Smith and Boswell, Tradeline's counsel has made every effort to prevent them from conducting post-judgment discovery to add the funder to the judgment and test the representation in November 2017 that "the funder is obliged to reimburse Tradeline for any award of reasonable costs" against it." These repeated acts constitute a concerted effort to keep Tradeline as the sole, insolvent judgment debtor available to Jess Smith and Boswell.

Without limitation, and as more fully set forth above, in the Court's record, and in Mr. Woods' supporting declaration, the acts by Tradeline's counsel include: (1) representing both Tradeline and the funder for purposes of opposing the motion to amend the judgment but now claiming a conflict between those parties; (2) agreeing to informally produce the funding agreements and then reneging on that agreement; (3) refusing to identify the funder; (4) providing objection-only responses to 10 out of 11 of the joint requests for production, including the requests for the funding agreements and for the communications between Tradeline and the funder about control of the case; and (5) delaying the informal discovery conference by informing Magistrate Judge Oliver that their representation of Tradeline has terminated and that they intend to withdraw as counsel two days before Judge Oliver could rule on Tradeline's objection-only responses and refusal to produce responsive documents. These are only the most glaring examples.

Because Tradeline and its counsel have repeatedly refused to produce any documents, Jess Smith and Boswell have been unable to pursue further their motion to add the litigation funder as a judgment debtor. Because Tradeline and its counsel have stated that Arrowhead Capital, LLC is not the funder while also refusing to identify the true funder, Jess Smith and Boswell have been and continue to be unable to serve a subpoena for the production of documents to the funder. Tradeline itself is an insolvent company based in Chennai, India.

Quinn Emanuel has the requested documents, including the critical funding agreements. As a result, Tradeline is in possession, custody, and control of these documents. If the Court grants the motion now, Quinn Emanuel will be able to continue to refuse to produce the requested documents in its possession and Jess Smith and Boswell will be unable to identify the funder, obtain the funding agreements, and the conduct the remainder of the post-judgment discovery that this Court authorized.

## IV. THERE IS NOT GOOD CAUSE TO GRANT THE MOTION

None of the four reasons set forth in the motion demonstrate good cause to grant it.[1]

### A. There Is No Conflict Between Tradeline And The Funder

There is no conflict between Tradeline and its funder and, even if there was, it does not support a good cause showing for a withdrawal because the alleged conflict has existed for nine months at a minimum.

Tradeline's counsel argues that, since the Ninth Circuit affirmed the judgment, an actual conflict of interest has arisen because Tradeline would benefit if the funder became a judgment debtor. Tradeline cites no authority to support the argument that these facts constitute an actual conflict so as to justify the withdrawal

---

[1] Tradeline's counsel also did not show that the moving papers were served on Tradeline as required by law. *Cal. Rules of Court, Rule* 3.1362(d)(2)

sought and the stated facts do not provide good cause for the requested withdrawal. Quinn Emanuel did not raise this issue until six weeks after the Ninth Circuit decision and did so only two days before the informal discovery conference with Magistrate Judge Oliver.

On August 12, Tradeline's counsel confirmed that they no longer represented the funder. As such, no actual conflict exists because there is no joint representation between Tradeline and its funder. Moreover, Tradeline's counsel only represented the funder for purposes of opposing the joint motion to amend the judgment. April 1, 2019 Transcript, 5:14-24.

Furthermore, to the extent that a conflict exists, this alleged conflict has existed since Jess Smith and Boswell applied to the arbitration tribunal for security for costs in late 2017. Since the inception of this case in October 2015, Tradeline has represented under oath that it was and is insolvent. Thus, Tradeline would have benefited as early as late 2017 if the tribunal ordered it or the funder to post security in case the tribunal issued an award of costs against Tradeline, which Tradeline's counsel should have reasonably predicted to amount to millions of dollars.

Similarly, Jess Smith and Boswell filed their joint motion to add the funder as a judgment debtor in December 2018, approximately nine months ago. At that time, Tradeline would have also benefited from the funder becoming financially responsible for the judgment. In fact, in their reply brief in support of the motion to amend the judgment, Jess Smith and Boswell stated:

> It is unclear how Quinn Emanuel can oppose Defendants' efforts to add a solvent party to the judgment against Tradeline without breaching its duty of loyalty to Tradeline. Obviously, it is in Tradeline's interest for additional parties to be added to the judgment.

Dkt. 104 at 5, fn. 3. Yet, during the hearing on that motion on April 1, counsel for Tradeline confirmed that Quinn Emanuel represented the funder and Tradeline for purposes of the motion. April 1, 2019 Transcript, 5:14-24. In response, counsel for

Jess Smith reiterated that it was difficult to understand how or why Tradeline had any interest in opposing the motion because Tradeline stood to benefit from the funder becoming a judgment debtor in December 2018 just as it does now. The Ninth Circuit's affirmance of the judgment did not change the potential benefit to Tradeline if the funder became a judgment debtor, and the motion presents no explanation or authority in that regard.

For these reasons, even if there was a conflict between Tradeline and the funder, it existed long before this motion and the Ninth Circuit's predictable affirmance of the judgment such that it does not and cannot support a good cause showing for the proposed withdrawal.

**B. Counsel For Tradeline's Recent Inability To Collect Fees And Expenses Does Not Constitute Good Cause To Withdraw**

A lawyer is permitted to withdraw, among other unrelated circumstances, only if the client "breaches a material term of an agreement with, or obligation, to the lawyer relating to the representation, and the lawyer has given the client a reasonable warning after the breach that the lawyer will withdraw unless the client fulfills the agreement or performs the obligation." *Cal. Prof. Conduct, Rule* 1.16(b)(5). The motion does not provide any authority to support the argument that a client's inability to pay alone constitutes good cause for this Court to grant a permissive withdrawal of counsel.

As stated in the motion's supporting declaration, counsel for Tradeline has only not been paid its fees or expenses for several months. Surprenant Decl., ¶ 4. At the conclusion of the arbitration proceeding, however, Tradeline's counsel stated that Quinn Emanuel had been paid approximately $2.5 million in fees as of March 19, 2018. Because Tradeline was always purportedly insolvent, its litigation funder must have paid Quinn Emanuel's fees. The motion does not state how much additional money the funder paid Quinn Emanuel after March 2018. In addition, in the costs memorandum it filed in the arbitration proceeding, Quinn Emanuel

admitted that it represented Tradeline under a partial contingency fee arrangement, meaning Quinn Emanuel stood to earn a portion of the $300 million in damages Tradeline alleged. In any event, Tradeline's counsel has received substantial fees for its work in this case and its recent inability to receive payment should not constitute a material breach of its retention agreement with Tradeline. The motion also does not suggest that Tradeline is in material breach of the retention agreement with its counsel, as required for the permissive withdrawal of counsel sought. Nonetheless, after the claim proved unsuccessful, Quinn Emanuel now seeks to withdraw, citing its inability to receive payment for several months as good cause without disclosing the other facts surrounding its fee arrangement.

Tradeline's counsel seems to suggest that its recent inability to receive payment is because "the funding agreement that was used to finance the litigation has been exhausted." Counsel for Tradeline should not and cannot rely on the funding agreement that they have refused to produce. Counsel for Tradeline offers no evidence of how or why the funding agreement has been exhausted and, as a result, Jess Smith, Boswell, and this Court have no ability to evaluate that representation. Furthermore, in the motion, Tradeline, with the assistance of its counsel, again failed to identify the funder. Accordingly, the Court should disregard it for purposes of deciding this motion.

None of the three cases which counsel for Tradeline cites support their argument either. *Lempert v. Superior Court (Campbell)*, 112 Cal.App.4th 1161 (2003) is distinguishable because it involved a criminal case where a defense attorney was retained to represent the defendant only through preliminary hearing, not through trial. After the preliminary hearing, the defense attorney moved to withdraw and have the defendant referred to the public defender for representation at trial. The trial court denied the motion and the Court of Appeal reversed. *Id.* at 1165-68. Counsel for Tradeline was not retained on a limited basis nor is this a criminal proceeding. Furthermore, the *Lempert* Court, as well as the cases it cited,

explained that California law "establishes that the court has discretion to deny an attorney's request to withdraw where such withdrawal would work an injustice or cause undue delay in the proceeding." *Id.* at 1173. As explained above, that is precisely the case here.

*Arch Ins. Co. v. Allegiant Prof. Bus. Servs.*, No. CV 11-1675 CAS (PJWx), 2012 WL 1745585, *1 (C.D. Cal. May 16, 2012) and *Pension Plan v. Yubacon Inc.*, No. C-12-0473 DMR, 2014 WL 1101659, *2 (N.D. Cal. Mar. 18, 2014) are unpublished cases and distinguishable. In *Arch* and *Pension Plan*, the Courts granted the motions to withdraw based not only on the client's failure to pay but also on their failure and refusal to communicate with counsel. *Arch, supra,* 2012 WL 1745585, *1; *Pension Plan*, *supra,* 2014 WL 1101659, *2.

### C. Termination Under The Retention Agreement Does Not Constitute Good Cause To Withdraw

Tradeline is a corporate entity which cannot proceed in this case in pro per. The motion is silent about any efforts to find replacement counsel for Tradeline. Termination of the relationship between Tradeline and its counsel under the retention agreement, without more, is not good cause to withdraw, and the motion cites no authority to support such a proposition. Finally, Jess Smith and Boswell will suffer irreparable prejudice and harm if the Court permits Tradeline's counsel to withdraw without substitute counsel because they will not be able to obtain documents in Quinn Emanuel's possession or conduct any of the authorized post-judgment discovery, given that Tradeline is now a defunct Indian corporate entity with no interest in participating further in this case.

### D. Tradeline's Consent To The Withdrawal Does Not Constitute Good Cause

For the same reasons as immediately above, Tradeline cannot simply consent to the withdrawal as a ground for the Court to grant the motion. As stated, Tradeline is a corporate entity that cannot proceed in pro per, it has not filed a

substitution of counsel, and Jess Smith and Boswell will be significantly prejudiced if the Court permits its counsel to withdraw without substituted counsel.

## V. CONCLUSION

The Court should deny the motion to withdraw for the reasons set forth in this opposition and its supporting declaration. At a minimum, even if the Court is inclined to grant the motion, the Court should defer doing so now, order Tradeline's counsel to first continue with the discovery process before Magistrate Judge Oliver, and comply with any resulting discovery orders, including the production of documents responsive to the requests. Otherwise, Tradeline and the funder will have successfully frustrated this Court's order permitting Jess Smith and Boswell to conduct post-judgment discovery to gather evidence to support a renewed motion to amend the judgment to add the funder as a judgment debtor.

Dated: September 9, 2019

STOEL RIVES LLP

By: /s/ *Edward C. Duckers*
Edward C. Duckers
Michael B. Brown
Jonathan A. Miles
Attorneys for
Jess Smith & Sons Cotton, LLC

Dated: September 9, 2019

MUSICK, PEELER & GARRETT LLP

By: /s/ *Dan Woods*
Dan Woods
Adam M. Weg
Attorneys for
J. G. Boswell Company

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is One Wilshire Boulevard, Suite 2000, Los Angeles, CA 90017-3383.

On September 9, 2019, I served true copies of the following document(s) described as **DEFENDANTS JESS SMITH & SONS COTTON, LLC'S AND J. G. BOSWELL COMPANY'S JOINT OPPOSITION TO MOTION TO WITHDRAW AS PLAINTIFF'S COUNSEL** on the interested parties in this action as follows:

**SERVICE LIST**

| | |
|---|---|
| Dominic Surprenant, SBN 165861<br>Paul Slattery, SBN 285291<br>QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>865 South Figueroa Street, 10th Floor<br>Los Angeles, California 90017-2543<br>Tel: (213) 443-3000<br>Fax: (213) 443-3100<br>*ds@quinnemanuel.com*<br>*paulslattery@quinnemanuel.com* | Attorneys for Plaintiff<br>TRADELINE ENTERPRISES PVT, LTD. |
| Edward C. Duckers, SBN 242113<br>Michael B. Brown, SBN 179222<br>Jonathan A. Miles, (SBN 268034<br>STOEL RIVES LLP<br>Three Embarcadero Center, Suite 1120<br>San Francisco, CA 94111<br>Tel: (415) 617-8900<br>Fax: (415) 617-8907<br>*ed.duckers@stoel.com*<br>*michael.brown@stoel.com*<br>*jonathan.miles@stoel.com* | Attorneys for Defendant<br>JESS SMITH & SONS COTTON, LLC |

☒ **BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

///

///

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on September 9, 2019, at Los Angeles, California.

*/s/Mark Clark*
MARK CLARK